# Richmond

## S. J. Oliver v. J. Preston Hewitt, et als.

June 19, 1950.

Record No. 3649.

Present, Hudgins, C. J., and Gregory, Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*Bangel & Bangel,* for the plaintiff in error.

*Earle A. Cadmus,* for the defendants in error.

MILLER, J., delivered the opinion of the court.

Prior to January 28, 1946, and until the present date, appellant, S. J. Oliver, has owned and operated a store on Lincoln Street in the city of Portsmouth, wherein groceries and soft drinks are sold. It is located a short distance from two other lots of land that he owned which adjoin each other and are described as Lots Nos. 1 and 2, Block 30, Prentis Park Plat.

On January 28, 1946, appellant and wife sold and conveyed to J. Preston Hewitt and Helen H. Alexander the two lots in Prentis Park. The deed conveying these lots was recorded on January 30, 1946, and contained the following convenant:

"The above conveyance is made upon the condition that said parties of the second part, nor their assigns, shall sell in any building to be erected upon said lots, any groceries or bottled drinks, except that bottled High Rock may be sold on said premises, on any day after six o'clock P.M."

On July 7, 1947, Helen H. Alexander and husband, and J. Preston Hewitt deeded the two lots to Pauline H. Hewitt. This deed did not contain the covenant or make

any reference thereto. However, the grantee, who is the wife of J. Preston Hewitt, had actual and constructive notice of the existence of the covenant. She leased the premises to W. H. Boyd, who is using the building thereon for the sale of groceries and soft drinks of any character. Though due to the recordation of the deed of January 28, 1946, he had constructive notice of the covenant, it does not appear from the record that he had actual notice of its existence when he leased the property.

S. J. Oliver claims that these facts prove that there has been a violation of the covenant by Pauline H. Hewitt and her lessee, W. H. Boyd, and that he is entitled to an injunction restraining such continued infraction of its terms. From a final decree which decided that the covenant was personal; that it did not run with the land; that it was not binding upon either Pauline H. Hewitt or her lessee, and denying the relief prayed for, appellant appealed.

It is apparent from the pleadings and evidence, and not denied, that the covenant was for the protection of appellant's business, and that the unrestricted use of the lots in question for the sale thereon of groceries and all kinds of soft drinks is in competition with and detrimental to appellant's interests.

We are therefore called upon to decide (1) whether or not the covenant is enforceable in equity against Pauline H. Hewitt who had constructive and actual notice of its existence when she purchased the land, and (2) whether or not it is enforceable in equity against W. H. Boyd who had constructive notice of its existence when he leased the property.

██ We have no difficulty in concluding that the restriction imposed upon the use of the land is a personal covenant for appellant's sole benefit as distinguished from a covenant that runs with the land. *Allison* v. *Greear*, 188 Va. 64, 49 S. E. (2d) 279, and 14 Am. Jur., "Covenants", sec. 27, p. 503. It is not for the natural use and enjoyment of the land retained by the grantor but is merely a restriction imposed

upon the use of the land conveyed which is simply for the purpose of protecting from injurious competition the business operated by the grantor. It is therefore a mere personal covenant that does not run with the land in equity.

This personal covenant is, however, binding between the original parties, both at law and in equity. More specifically stated, it falls within that class of covenants which at law bind only the original parties as it does not run with the land; but, in equity, one is bound by such a personal restrictive covenant even though it does not run with the land if he takes title with knowledge of its existence, even though the deed to him did not recite the restriction.

This principle is clearly announced in 26 C. J. S., "Deeds", sec. 167, p. 547, where it is stated:

"* * * So, regardless of whether a covenant not to use the land for certain purposes runs with the land, a court of equity will, nevertheless, enforce it against a grantee taking title through a deed reciting the covenant and subject thereto, or against a grantee taking title with full knowledge of its existence, although it be omitted from his deed * * *."

The following authorities recognize and adhere to the above principle: *Tulk* v. *Moxhay*, 2 Phillips 774; *Cheatham* v. *Taylor*, 148 Va. 26, 138 S. E. 545; *Whitney* v. *Union Ry. Co.*, 11 Gray (77 Mass.) 359, 71 Am. Dec. 715; Pomeroy on Equity Jurisprudence, 4th Ed., Vol. 4, secs. 1694, 1695; Northrup on Law of Real Property, p. 377, and 24 Harvard Law Review 574.

It is provided by section 3393, Code, 1942 (sec. 17-60, Code, 1950), that "All deeds * * * and all contracts in reference to real estate which have been acknowledged as required by law, * * * and all other writings relating to and affecting real estate which are authorized to be recorded, shall, unless otherwise provided, be recorded in a deed book to be known as the deed book."

This section, as well as section 5194, Code, 1942 (sec. 55-96, Code, 1950), having to do with the recordation of deeds, was complied with when the deed of July 28, 1946,

which imposed the restriction was admitted to record.
Though it is not shown that W. H. Boyd, lessee of the
premises, had actual knowledge of the covenant, it does
appear that through recordation of this deed, he had con-
structive notice. It was constructive notice to the subse-
quent grantee, Pauline H. Hewitt, and her lessee, W. H.
Boyd. *Cheatham* v. *Taylor, supra,* and *Saffell* v. *Orr,* 109
Va. 768, 64 S. E. 1057. Under these facts, in equity the
restrictive personal convenant limits the use to which either
or both may put the lots in question. 51 C. J. S., "Land-
lord and Tenant", sec. 238, p. 866.

█ Nor do we deem the covenant illegal for its terms
afford only fair protection to the interests of appellant
and are not so broad as to interfere with the public interest.
*Klaff* v. *Pratt,* 117 Va. 739, 86 S. E. 74; *Boggs* v. *Friend,*
77 W. Va. 531, 537, 87 S. E. 873, and *Barnes* v. *Koontz,* 112
W. Va. 48, 163 S. E. 719.

*Whitney* v. *Union Ry. Co., supra,* is considered a lead-
ing case on the question presented. There Mrs. Whitney
was the owner of a tract of land, which she subdivided
into lots and conveyed one of them to White by a deed
containing restrictions as to use. She continued to be the
owner of a part of the original tract and occupied a dwell-
ing house thereon.

In holding that equity would restrain the violation of the
covenant in the suit of Mrs. Whitney against White's
successors in title, the court said:

[5] "* * * Every owner of real property has the right
so to deal with it as to restrain its use by his grantees within
such limits as to prevent its appropriation to purposes which
will impair the value or diminish the pleasure of the en-
joyment of the land which he retains. The only restriction
on this right is, that it shall be exercised reasonably, with
a due regard to public policy, and without creating any
unlawful restraint of trade. * * *" 71 Am. Dec. 716-17.

█ "In this view, the precise form or nature of the
covenant or agreement is quite immaterial. It is not essential

that it should run with the land. A personal covenant or agreement will be held valid and binding in equity on a purchaser taking the estate with notice. It is not binding on him merely because he stands as an assignee of the party who made the agreement, but because he has taken the estate with notice of a valid agreement concerning it, which he cannot equitably refuse to perform: * * *" *Idem*, p. 718.

The decision of *Tardy* v. *Creasy*, 81 Va. 553, 59 Am. Rep. 676, is relied upon by appellees to sustain their contention that this covenant is illegal and unenforceable. However, we think that case is readily distinguishable from the one at bar. There one Tolbert conveyed five and one-half acres of land to Tardy. In deeds granting the same, he undertook to impose broad, inclusive and stringent restrictions upon the use by himself, his heirs and successors in title, of a tract of three hundred and sixty-eight acres retained by him and adjoining that sold to Tardy—thus granting to Tardy exclusive right to use his small acreage for the broad, inclusive and enumerated purposes.

An injunction was denied Tardy, who sought to restrain Creasy, a successor in title of Tolbert, to one acre of the three hundred and sixty-eight acre tract from conducting thereon a mercantile business. Relief was denied primarily upon the ground that the restrictive covenant was illegal and unenforceable because it constituted a general restraint of trade. The court said:

"The covenants, by Tolbert, in his deeds to Tardy, which have already been recited in full, amount to a contract on the part of Tolbert that he will abstain from all sorts of business on the land owned by him, of three hundred and sixty-eight acres, in and around the junction, including the right to sell wares, goods, and merchandise; to keep houses of public entertainment and refreshment; and to establish and erect warehouses, factories, foundries, and shops; and that the same should apply to his heirs and assigns, who should be deprived of these privileges, and should run with

the lands of the said Tolbert to whomsoever hereafter devised or conveyed.

"These covenants cannot be said to be in partial restraint of trade only, and therefore not void, for while they apply to a particular parcel of land, they apply to all business which could be carried on. It would be difficult to devise any trade which would not come within the terms employed—sell goods, &c., warehouses, factories, foundries and shops. They constitute a general restraint of trade, and cannot be enforced by the court as annexed to the land; they are not for a term, but forever, attempting to bind heirs and assignees. * * *

"These covenants are in general restraint of trade, and are void as such, so far as they affect the land in the appellee's hands, who is the vendee of Roach, who was the vendee of Tolbert." 81 Va. at pp. 561, 562.

We conclude that appellant is, so long as he conducts his store for the sale of groceries and soft drinks (14 Am. Jur., "Courts", sec. 205, p. 616), entitled to an injunction restraining Pauline H. Hewitt, the owner of the lots, and her lessee, W. H. Boyd, from operating the store wherein groceries and soft drinks are sold and dispensed (excepting High Rock after 6:00 o'clock p. m.).

The decree is reversed and the cause remanded to the trial court for the entry of an injunction in conformity with this opinion.

*Reversed and remanded.*