# Richmond

## J. D. Carneal, Jr. v. Helen Y. Kendig, Widow, Etc., W. R. Tanner, Et Al.

January 17, 1955.

Record No. 4303.

Present, Hudgins, C.J., and Eggleston, Spratley, Buchanan, Miller and Smith, JJ.

The opinion states the case.

*Satterfield & Anderson* and *Allen, Allen, Allen & Allen,* for the appellant.

*Cralle F. Blackwell,* for the appellees.

MILLER, J., delivered the opinion of the court.

By deed dated November 14, 1946, recorded four days later, W. D. Kendig and Helen Y. Kendig, his wife, W. R. Tanner and wife, and John D. Kendig, parties of the first part, conveyed to D. C. Tomlinson and Marie M. Tomlinson, parties of the second part, real estate in the town of Victoria, Virginia, known as the "Patrick Henry Hotel," which is the subject matter of this litigation. It is a parcel of land fronting 50 feet on the southern line of Main street and extending back southwardly between the western line of Sixth street and a line parallel therewith 88 feet, with all improvements thereon.

In the deed the grantors expressly reserved for themselves, their heirs and assigns all moving "picture equipment and accessories which are used and necessary in the operation of a picture show now located in said building, or which may be hereafter installed in said building * * *." The deed then contained the following covenant:

"It is covenanted and agreed between the parties that the said parties of the second part, their executors, administrators, or assigns, shall not use, rent, lease or sell the said property herein conveyed for the operation of any picture show, other than to the parties of the first part, without the expressed written consent of the said parties of the first part,

their executors, administrators or assigns, and that this covenant shall be construed as a covenant running with the land."

By deed of general warranty, dated August 8, 1949, J. D. Carneal, Jr., acquired this real estate, but he had no actual knowledge of the covenant when he obligated himself to purchase the property.

In a letter of May 7, 1953, Carneal requested appellees to release the restrictive covenant, but that request was refused. He then filed his petition for a declaratory judgment in which he alleges that the covenant constitutes a restraint upon alienation, is repugnant to the grant of a fee simple estate and against public policy, and is in restraint of trade and illegal. It is prayed that the covenant be declared void and of no effect.

The testimony was heard *ore tenus* by the chancellor, who concluded that the covenant was valid and entered a decree, the material part of which follows:

"* * * the Court is of the opinion, and doth so Adjudge and Decree that the said covenant and agreement, mentioned above, is a valid restriction binding upon the said property for the life and/or lives of W. R. Tanner and John D. Kendig, and is valid and binding on the successors in title of D. C. Tomilson and Marie M. Tomilson, his wife, their executors, administrators or assignors [assignees]. * * *"

From this decree Carneal appealed.

The sole question presented is whether or not the chancellor erred when he held that the covenant was valid and could be enforced by W. R. Tanner and John D. Kendig during the lives of those two grantors, or either of them.

W. D. Kendig, one of the grantors, died before suit was instituted, and in the petition appellant stated that "John D. Kendig is successor to W. D. Kendig, deceased, in the premises." The building on the lots is a three-story, brick structure, planned and designed for a hotel and has been used for that purpose ever since its erection in 1922. At the time it was built, or a few years thereafter, the part of the

first floor that fronts on Main street was modeled and designed for a theatre. It comprises about one-half of the first floor, and that area of the building has been used for a moving picture theatre for the last twenty-five years. Above the theatre are hotel rooms and thus the part of the building devoted to a theatre consists of about one-sixth of the floor area of the three-story structure.

The building was briefly described by appellant as follows:

"A. It is a three story brick building operated as a hotel and under the same roof with a partition—brick partition—operated as a theater—a moving picture show."

Appellant's testimony is to the effect that it would be difficult to remodel the theatre area so that it could be used for other purposes, and as a business venture, he thought it would be costly and impractical to make such alterations. That area of the building is now leased to appellees who operate a moving picture show therein.

Appellant also said that prospective purchasers lose interest in acquiring the property when they learn of the restriction upon its use.

W. D. Kendig operated a moving picture show in the hotel building from 1938 until his recent death. W. R. Tanner, one of the grantors in the deed of November 14, 1946, was associated with him in its operation from the latter date until Kendig's death, and since that time Tanner and John D. Kendig have continued to operate the picture show. Tanner testified that the area in the building now devoted to moving pictures, was used for a theatre in 1929, and has been used for that purpose continuously since that date. This witness also said that when the covenant was inserted in the deed of November 14, 1946, he and other grantors intended to continue operating a moving picture theatre in Victoria, but were interested in acquiring another lot upon which to erect a more commodious and better equipped building. That protection of the grantors' moving picture business in Victoria from detrimental competition was the

reason why the covenant was inserted in the deed is shown by this part of Tanner's testimony:

"Q. So it was the understanding between the parties that two picture shows or competition in the Town of Victoria would not be profitable to anyone and would certainly hurt your business as a motion picture operator?

"A. That is correct.

"Q. And was that the purpose of inserting this clause in this deed?

"A. That is right."

In furtherance of this plan grantors thereafter acquired a lot on Main street about a block and a half distant from the Patrick Henry Hotel, and contemplate the erection of a theatre building on that lot. While Tanner would not state when its erection would be undertaken, he did say that the lot was purchased and had been retained with the definite intention of erecting a theatre thereon and that plans for the building had been drawn and were in his possession.

■ Because it would be costly and impractical to alter the theatre area in the bui'ding so that it would be available for other uses, appellant insists that the covenant unreasonably restricts the use of the property and its practical effect is to lessen its value and unreasonably limit and restrain its alienation. He then argues that as a material part of the building is only suitable for a theatre, the restrictive effect of the covenant upon its use constitutes and amounts to an unreasonable restriction upon its alienation, and that the covenant is therefore rendered void.

"* * * The right of alienation is an inherent and inseparable quality of an estate in fee simple. In a devise of land in fee simple, therefore, a condition against all alienation is void, because repugnant to the estate devised." *White* v. *White*, 108 W. Va. 128, 131, 150 S. E. 531, quoting from *Potter* v. *Couch*, 141 U. S. 296, 11 S. Ct. 1005, 1010, 35 L. ed. 721. *Mandlebaum* v. *McDonell*, 29 Mich, 78, 18 Am. Rep. 61.

"It is frequently said that a reasonable restraint on aliena-

tion is valid. Obviously, there can be no adequate general test of reasonableness in this connection. The basis for decision would seem to be whether, in the individual case, the policy in support of free alienation on the one hand outweighs on the other the policy to carry out the wishes of the grantor or testator. In connection with the determination of this question there must be considered also the favor or disfavor which the limitation under scrutiny has in the law. * * *" 1 Minor, *Real Property*, (2d ed.) § 555. *Camp v Cleary*, 76 Va. 140.

Though the restriction may render the property less desirable to some prospective purchasers and thus tend to lessen its value, yet that is the effect of many valid but reasonable restrictions upon the use of property. This property is available for all uses other than that of a moving picture theatre, and the greater part of it is suitable for and has always been devoted to the hotel business. Because part of it is modeled for a theatre, this restriction upon its use for that purpose, imposed to protect the grantors' business in Victoria, cannot be said to restrict unreasonably its alienation. It may be freely disposed of, and the restriction goes only to its use and not to its alienation. As construed by the court, it is effective only for the lives of the grantors.

We are reminded that the grantors did not acquire the lot in Victoria upon which they intend to erect another theatre building until subsequent to November 14, 1946, the date that this restriction was imposed. That being true, appellant insists that if the covenant be solely a restriction upon the use of the property, it is nevertheless void because it was not imposed for the benefit of any other property that was owned by the grantors at the time the conveyance was made and the restriction imposed.

He strongly contends that a covenant restricting the use of property conveyed can only attach to and be imposed for the benefit of land retained by the grantor or for the protection of other landowners or purchasers in a plan or subdivision. To support this position he cites the following

cases: *Whitehurst* v. *Burgess*, 130 Va. 572, 107 S. E. 630; *Deitrick* v. *Leadbetter*, 175 Va. 170, 8 S. E. (2d) 276, 127 A. L. R. 849; *Booker* v. *Old Dominion Land Co.*, 188 Va. 143, 49 S. E. (2d) 314; *Ault* v. *Shipley*, 189 Va. 69, 52 S. E. (2d) 56. In these cases the restriction on the use of the property conveyed was imposed for the benefit of other land owned by the grantors or it was for the protection of the land of other purchasers in a plan or subdivision. Yet we find nothing said in those decisions that so narrowly limits the effect of restrictive covenants as contended by appellant.

When the deed of November 4, 1946, was executed, the grantors conducted a theatre business on the premises conveyed, and they desired and intended to continue to conduct that business in the town of Victoria. The restriction was not intended to affect the natural use and enjoyment of any land retained by the grantors. It was a personal covenant imposed to protect the grantors' theatre business from injurious competition, and thus the retention or ownership of other land that would be benefited thereby was not necessary to the validity and enforceability of this covenant. It is plain that the restriction was for the grantors' personal benefit as distinguished from a covenant running with the land.

In *Oliver* v. *Hewitt*, 191 Va. 163, 60 S. E. (2d) 1, appellant Oliver, who operated a store on his property in which groceries and soft drinks were sold, conveyed nearby lots, and in the deed, the following covenant was inserted:

"The above conveyance is made upon the condition that said parties of the second part, nor their assigns, shall sell in any building to be erected upon said lots, any groceries or bottle drinks, except that bottled High Rock may be sold on said premises on any day after six o'clock P. M."

Oliver's grantees conveyed the lots to Pauline H. Hewitt who took with record notice of the covenant. In construing and holding the covenant enforceable by Oliver against Pauline H. Hewitt, we said:

"We have no difficulty in concluding that the restriction imposed upon the use of the land is a personal covenant for appellant's sole benefit as distinguished from a covenant that runs with the land. *Allison* v. *Greear*, 188 Va. 64, 49 S. E. (2d) 279, and 14 Am. Jur., "Covenants", sec. 27, p. 503. It is not for the natural use and enjoyment of the land retained by the grantor but is merely a restriction imposed upon the use of the land conveyed which is simply for the purpose of protecting from injurious competition the business operated by the grantor. It is therefore a mere personal covenant that does not run with the land in equity.

"This personal covenant is, however, binding between the original parties, both at law and in equity. More specifically stated, it falls within that class of covenants which at law bind only the original parties as it does not run with the land; but, in equity, one is bound by such a personal restrictive covenant even though it does not run with the land if he takes title with knowledge of its existence, even though the deed to him did not recite the restriction." At pages 166, 167.

The grantors' interest in the moving picture business that they sought to protect is ample to justify the restrictive covenant intentionally agreed to by the grantees when they purchased and obtained conveyance of the land upon which the restriction was imposed. *Oliver* v. *Hewitt, supra.* See 4 Pomeroy, *Equity Jurisprudence* (4th ed.) § 1695; *VanSant* v. *Rose*, 260 Ill. 401, 103 N. E. 194 (170 Ill. App 572); 16 Mich. Law Rev. 90, 96.

This restriction as construed and enforced in the decree appealed from merely prevents the use of the hotel property "for the operation of any picture show" during the lives of the grantors unless their written release of the restriction be obtained. It is limited in time and it is intended solely to protect the business being conducted by the grantors. It cannot be said to be in unreasonable restraint of trade for its only effect is to afford reasonable protection to the business operated by grantors in Victoria.

"* * * Restrictions on the use of land are not favored at law, but, where the intention of the parties is clear in their creation, they are confined within reasonable bounds and are not against public policy, they will be upheld." 26 C. J. S., § 162(b), p. 508. 14 Am. Jur., Covenants, Conditions and Restrictions, § 206, p. 616.

"Nor do we deem the covenant illegal for its terms afford only fair protection to the interests of appellant and are not so broad as to interfere with the public interest. *Klaff* v. *Pratt*, 117 Va. 739, 86 S. E. 74; *Boggs* v. *Friend*, 77 W. Va. 531, 537, 87 S. E. 873, and *Barnes* v. *Koontz*, 112 W. Va. 48, 163 S. E. 719." *Oliver* v. *Hewitt, supra,* at 168.

The trial court's declaratory decree construing and sustaining the covenant is affirmed.

*Affirmed.*