TRI–CONTINENTAL FINANCIAL COR-
PORATION, Appellant,

v.

TROPICAL MARINE ENTERPRISES,
INC., et al., Appellees.

No. 17543.

United States Court of Appeals
Fifth Circuit.

April 8, 1959.

Albert R. Connelly, New York City, Arthur W. Milam, Jacksonville, Fla., Claude Pepper, Miami, Fla. (John D. Calhoun, Donald Cronson, John F. Hunt, Jr., Cravath, Swaine & Moore, New York City, Milam, LeMaistre, Ramsay & Martin, Jacksonville, Fla., of counsel), for appellant.

William Alonzo Carter, John W. Ball, Jacksonville, Fla. (Adair, Ulmer, Murchison, Kent & Ashby, Jacksonville, Fla., of counsel), for Owens-Illinois Glass Co.

Harold B. Wahl, Jacksonville, Fla., J. Franklin Fort, Washington, D. C., Marshall S. Scott, Stuart W. Patton, Miami, Fla. (Loftin & Wahl, Jacksonville, Fla., Kominers & Fort, Washington, D. C., of counsel), for West India Fruit & Steamship Co., Inc., and others.

Before HUTCHESON, Chief Judge, and TUTTLE and JONES, Circuit Judges.

HUTCHESON, Chief Judge.

Appealing from a summary judgment entered in a proceeding to foreclose a mortgage on a vessel, the Abaco Queen, plaintiff-appellant, challenging as erroneous the findings and conclusions [1] of the district judge, that the restrictive

---

1. As pertinent here, these are:

"Impleaded defendant West India Fruit & Steamship Co., Inc., chiefly engaged in car ferry operations between the United States and Cuba, sold the vessel now known as 'Abaco Queen' to National Container Corporation (now intervener Owens-Illinois Glass Co.) in January, 1956. The bill of sale contained a restrictive covenant that the vessel, for 10 years, would not be operated between ports or places in the States of Georgia, Florida, Mississippi, Alabama, and Louisiana, or any one or more of them, and ports or places on the Island of Cuba, as a car ferry, train ferry, truck ferry, auto ferry, or passenger ferry, or any combination thereof, or in any service or trade between said ports or places for the transportation of passengers, or of cargo in trailers, containers, rail cars, automobile or trucks. The covenant also provided that should it be violated National Container (now Owens-Illinois Glass Co.) would be liable to West India in the sum of $1,250,000.00.

"National Container later resold the vessel to defendant Tropical Marine Enterprises, Inc., with the same restrictive convenant. Plaintiff Tri-Continental Financial Corporation financed the transaction with knowledge of the covenant in the bill of sale and took a mortgage on the vessel (which mortgage

covenant in the bill of sale to the Queen against its use in the specified trade was valid and of binding force against the mortgagee and any purchaser at the foreclosure sale, seeks a reversal and rendition or at least a reversal and remand of the judgment giving effect to these findings and conclusions.

The action which resulted in the judgment under attack was begun July 6, 1957, by plaintiff-appellant, Tri-Fi, the mortgagee, as an ordinary proceeding to foreclose its mortgage. Original parties

to it were the mortgagor, Tropical Marine Enterprises, Inc. (T.M.E.), T.M.T. Trailer Ferry Co., Inc., parent of T.M.E., and insolvent guarantor of the mortgage indebtedness, and one Gibbs Corp. (Gibbs), a junior lienor.

On September 4, 1957, appellee Owens Illinois Glass Corp. (Owens) intervened, alleging: that on April 18, 1956, it had purchased the Queen from West India Fruit and Steamship Co. (West India), subject to a restrictive covenant;[2] that on November 20, 1956, it had sold the

is here sought to be foreclosed) although the mortgage made no reference to the restriction.

"Plaintiff now brings this suit to foreclose the mortgage, the defendant Tropical Marine Enterprises, Inc. interposes no defense thereto and plaintiff is entitled to a decree of foreclosure subject only to the question of (a) whether the vessel should be sold subject to the restrictive covenant and (b) * * *."

" * * * West India, by affidavit, makes it clear it would never have sold the vessel could the vessel have been used in competition with West India. The Court is convinced that the restrictive covenant is reasonable in time, territory and extent, and is binding on any purchaser of the vessel who has notice thereof. A decision of the United States Supreme Court upholding an almost identical restriction is Oregon Steam Nav. Co. v. Winsor, 20 Wall. 64, 22 L.Ed. 315. To much the same effect is Cincinnati P.B.S. & P. Packet Co. v. Bay, 200 U.S. 179, 26 S.Ct. 208, 50 L.Ed. 428. Under these cases there is no violation of the anti-trust laws. See also West Shore Restaurant Corp. v. Turk, Fla.1958, 101 So.2d 123, and Diamond Match Co. v. Roeber, 1887, 106 N.Y. 473, 13 N.E. 419.

"The Court specifically holds that not only was this a valid covenant as between the original parties, but that it is an equitable servitude, valid and binding on subsequent purchasers with notice. See Tulk v. Moxhay, 2 Phil.Ch. 774, 41 Eng.Rep. 1143 (1848); Capitol Records v. Mercury Records Corp., 2 Cir., 221 F. 2d 657; Lord Strathcona Steamship Co. v. Dominion Coal Co. (1926) A.C. 108 (P.C.) where the English Privy Council pointed out that the vessel was not bought as a free ship and that the buyer could not extinguish the right in the vessel of which he had notice; Great Lakes & St. Lawrence Transportation Co. v. Scranton Coal Co., 7 Cir., 239 F. 603;

and Palmer v. Chamberlin 5 Cir., 191 F. 2d 532 [27 A.L.R.2d 416].

"On consideration thereof, it is

"Considered, ordered and adjudged that the motion for summary judgment be and the same is hereby granted since there is no genuine issue as to any material fact, provided that plaintiff's mortgage is superior to the Gibbs Corporation lien, and that the sale be subject to the restrictive covenant aforesaid." [164 F. Supp. 2.]

2. This provided inter alia:

" * * * as a part of the consideration inducing the seller to enter into the agreement for the sale and transfer of the vessel [Abaco Queen] pursuant to this contract, the buyer, for a period of ten years from the date of delivery of the vessel, will not operate said vessel, or cause or permit said vessel to be operated, or sell or charter said vessel to be operated, between ports or places in the State of Georgia, Florida, Mississippi, Alabama, and Louisiana, or any one or more of them, and parts or places on the Island of Cuba, as a car ferry, train ferry, truck ferry, auto ferry, or passenger ferry, or any combination thereof, or in any sevice or trade between said ports or places for the transportation of passengers, or of cargo in trailers, containers, rail cars, automobiles or trucks.

* * * * *

"The Buyer agrees that any subsequent sale of the vessel by it or by successor transferees shall be made subject to all the terms, conditions, and restrictions contained herein, and that at or before the vessel shall be transferred to any subsequent purchaser, it shall obtain and deliver to Seller, or cause to be obtained and delivered to Seller, agreement in writing from any such purchaser that said vessel shall not be operated between the ports or places as hereinabove set forth.

vessel to T.M.E., subject to the covenant; and that Tri-Fi had taken the mortgage with knowledge of, and subject to the covenant. So alleging Owens prayed that the decree of foreclosure provide that the sale of the Queen be made subject to the restrictive covenant, and that it should be binding on the purchaser.

Tri-Fi, admitting that it had taken its mortgage with notice of the covenant not to compete and opposing the relief sought by West India and Owens, prayed that the decree of foreclosure permit the Abaco Queen to be sold free of all restrictions on its use. Tri-Fi asserted two issues in defense, viz., (1) that the covenant on the Abaco Queen is, as a matter of law, not enforceable against Tri-Fi as a non-assenting mortgagee, i.e., that such

covenants do not run with chattels and (2) that the terms of the covenant not to compete on the Abaco Queen constituted illegal restraints of trade under Sections 1 and 2 of the Sherman Act (15 U.S.C.A. §§ 1 and 2).

Thereafter West India, made a party by Owens, filed a plea and prayer in general effect the same as the one Owens had filed, except that, unlike Owens, it sought a declaratory judgment that the covenant was not illegal under the Sherman Act. Tri-Fi then moved on the pleadings and the undisputed facts [3] for "an order (1) granting plaintiff summary judgment against defendant, Tropical Marine Enterprises, Inc., for the relief demanded in the Complaint (with the amount of attorneys' fees to which plaintiff is entitled,

"In the event that the buyer and/or any subsequent purchaser of the vessel, whether or not such purchasers have agreed to the conditions contained herein, shall operate, or cause said vessel to be operated in the trade prohibited by this agreement, then and in that event the buyer shall pay the seller as liquidated damages and not as a penalty, the sum of $1,250,000.00. In addition to said payment, the seller may have relief by injunction to prevent operation of the vessel in the trades hereinabove described, together with any other relief provided by law for enforcement of this agreement."

3. Appellee West India Fruit & Steamship Co., Inc. has, since 1946, been a steamship carrier of general cargo in railroad cars between the United States and Cuba. It operates railroad car ferries between Palm Beach and Havana and between Belle Chasse (Louisiana) and Havana, and a passenger and automobile ferry between Key West and Havana. It serves shippers throughout the central and eastern United States and competes with at least ten general cargo carriers serving Cuba through East and Gulf Coast ports from New York to Houston.

In 1956 West India sold one of its vessels, the S.S. Abaco Queen (ex-Antonio Maceo) for $750,000.00 to National Container Corp. for use in transporting wood pulp between Jacksonville and the Bahamas. The parties understood that West India would not sell the vessel if she were to be operated in the ferry trade between Florida, Georgia, Mississippi, Alabama, or Louisiana and Cuba, and National Container did not intend

such use. The contract of sale provided as set out in note 2 supra, and further provided that in the event the vessel should ever be operated in the restricted trade, then National Container would pay West India $1,250,000 as liquidated damages.

Running for ten years only the restriction does not limit use of the vessel either for the carriage of cargo to Cuba otherwise than in railroad cars, vehicles, or containers, or for any use whatever in any other trade in the United States, or anywhere in the world. And the covenantor and its successors are free to use any other vessel with no restriction.

Late in 1956 National Container sold the vessel to appellee Tropical Marine Enterprises (TME) for $875,000.00. In the contract of sale, TME bound itself by a restriction substantially the same as that upon National Container and agreed to pay National Container $1,250,000 as liquidated damages if the restriction were breached by TME or by any subsequent purchaser. At about this time National Container was merged into appellee Owens-Illinois Glass Co.

To finance the purchase, TME borrowed $775,000.00 from appellant (Tri-Fi) upon a note secured by a chattel mortgage on the ship. As part of the consideration for the loan, Tri-Fi received a warrant or option to purchase 193,750 shares of the stock of TMT Trailer Ferry, Inc. (TMT) an affiliate of TME. Tri-Fi entered into the loan agreement, made the loan, and accepted the chattel mortgage and warrant with full knowledge of the existence and terms of the covenant. This is admitted.

subsequently to be determined), (2) granting plaintiff summary judgment against defendant, Gibbs Corporation, for the relief demanded in the Complaint; (3) granting summary judgment in plaintiff's favor on the issues raised by the petition of Owens-Illinois Glass Company, the answer to that petition and counterclaim of plaintiff, and the petition of West India Fruit and Steamship Co., Inc., on the ground that the restrictive agreement relied upon by Owens-Illinois and West India do not 'run with the boat' so as to bind plaintiff or the purchaser at a foreclosure sale; * * * ". (Record p. 142.)

The district judge rejecting plaintiff's contentions and embodying in the judgment of foreclosure provisions directly contrary thereto, appellant is here arguing with earnestness and conviction that in so holding and adjudging, the district judge went counter to established law.

With equal earnestness, insisting that it did not ask for a summary judgment on the anti-trust issue, it urges upon us that in holding and adjudging that the covenant was not in violation of the Sherman Act and illegal, the district judge erred (1) procedurally (a) in dealing with that issue, though plaintiff did not present it for summary determination, and (b) in concluding that in respect to it, there was no issue as to any material fact, and (2) as a matter of substantive law, in holding (a) that the covenant is reasonable in time, territory and extent, (b) that it does not violate the anti-trust laws; and (c) that it is binding on the mortgagee and will be on the purchaser at foreclosure sale.

Taking no position with respect to the validity of the restriction under the Sherman Act, except to assert that appellant, for the purpose of the determination of its motion for summary judgment, conceded its validity in that respect, but taking strong issue with appellant's position that the finding and judgment, that the mortgagee took subject to the restrictive covenant and the purchaser at the foreclosure sale would likewise take subject thereto, were erroneous, appellee Owens is here insisting that the judgment must be affirmed.

Posing the ultimate issue for decision below and here as whether the covenant between vendor and vendee of the Queen restricting her use in respect to a specific trade is binding upon the mortgagee who with full knowledge of the covenant loaned the vendee the money necessary to purchase the vessel and consequently is binding upon the purchaser at the sale, appellee West India insists that this issue and all the facets of it, including the validity of the covenant against the claim that it violated the anti-trust laws, was properly before the court for decision, the parties, in support of their respective views, its cross action and the intervention of Owens, and was properly decided by the district judge on the undisputed facts.

Upon the interesting questions thus presented for decision, the parties, in support of their respective views, have in briefs and arguments, exhibiting a high order of advocacy, marshalled the facts and canvassed the applicable law, and, greatly aided thereby, we have reached the firm conclusion that the district judge was right in permitting the introduction of parties into the foreclosure suit and the tender for declaratory judgment thereon of issues other than those necessary to the mere foreclosure of the mortgage lien.

■ This is not to say that, since under the general doctrine, "In a proceeding to foreclose a mortgage lien, while it is proper to make anyone claiming under the mortgagor a party to such foreclosure proceedings, it is not allowed to put in issue the mortgagor's title",[4] i.e., the foreclosure passes the mortgaged interest, it neither adds to nor detracts therefrom, we have not had some difficulty in concluding that the district

---

4. Hampshire v. Greeves, 104 Tex. 620 at page 624, 143 S.W. 147, at page 149. Cf. Kirby Lumber Corp. v. Williams, 5 Cir., 230 F.2d 330, 332, and cases there cited.

judge was right in determining that there was an actual controversy as to the matters introduced into the foreclosure suit by the pleadings of the parties. It is to say, though, that, considering the wideness of the discretion vested in the district judge by the declaratory judgment statute, Sec. 2201, Title 28 U.S.C. and Rule 57, Federal Rules of Civil Procedure, Title 28 U.S.C.,[5] we conclude that the district judge did not abuse his discretion in proceeding as he did to a judgment which, not at all undertaking to add to or subtract from the mortgagor's interest foreclosed, merely declared the existing nature and condition of that interest.

■ For the reasons hereafter stated, we think that he was right (1) in regarding all of the issues decided by him as properly before him for decision, (2) in the conclusions that he reached as to these issues, and (3) in the judgment entered in accordance therewith. We recognize that appellants present and argue, not queryingly and tentatively but positively and with confidence, that the anti-trust question was not in issue in the summary judgment proceeding, and we have no disposition to treat this contention lightly. We think, however, that, in the light of the proceedings below taken as a whole, including the pleadings of the parties and particularly plaintiff's motion seeking specifically summary judgment for debt and foreclosure and "summary judgment in plaintiff's favor on the issues raised by the petition of Owens Illinois Glass Co., the answer to that petition and counter claim of plaintiff, and the petition of West India Fruit and Steamship Co., Inc." appellant's reliance on Prepo Corp. v. Pressure Can Corp., 7 Cir., 234 F.2d 700 will not do, and that its position may not be maintained.

It is true that the ground put forward by plaintiff to support the claim "for summary judgment on all the issues raised" by the litigants is "that the restrictive agreement relied on by Owens Illinois and West India does not 'run with the boat' so as to bind plaintiff or the purchaser at a foreclosure sale", and that the ground that the covenant was illegal under the Sherman Act was not specifically put forward in the motion. This, however, makes against, not for, appellant's present position that, though in its motion it asked for a judgment "in plaintiff's favor on the issues raised" by the pleadings of its adversaries it was at the same time withholding submission of some of those issues. In short, when it is recognized, as it must be, that a final judgment in the suit for debt and foreclosure could not have been entered with the reservations now asserted and there is added to this the specific prayer of the motion that judgment be entered in its favor on all the issues, it appears, we think, in the plainest kind of way beyond the power of argument to change it, that appellant's position, that the request for summary judgment and the granting of the summary judgment were with legally effective reservations, is in fact and in law wholly untenable. Lloyd v. Franklin Life Ins. Co., 9 Cir., 245 F.2d 896.

When, these procedural questions determined against appellant, we reach those going to the merits, we think it equally clear that its position on both aspects of the case, the validity and the binding force upon it of the covenant, rest upon an approach to the decision of the case which finds no support in the record and none in the applicable law.

As we understand them, these are its positions as to the anti-trust issue; (1) that the court erred in holding that there was no issue as to any material fact; (2) that the covenant is reasonable in time, territory and extent; and (3) that enforcement of it does not, and will not, violate the anti-trust laws.

■ Of these, it is sufficient to say: that every fact, which is material here in the determination of these questions, clearly appears from the pleadings, the undisputed facts, and the terms of the instrument itself; that, measured by

---

5. State Farm Mutual v. Bonwell, 8 Cir., 248 F.2d 862.

rules governing such ancillary agreements,[6] the covenant, limited as it is in time and in scope, is, in every respect important here, reasonable in time, territory and extent, and of no further extent than is necessary to protect West India; and that the authorities are almost uniform that such a restriction does not violate the anti-trust laws. It will serve no useful purpose, therefore, to discuss these cases. Some of them are cited in the conclusions of the district judge, note 1, supra. Others cited in the briefs are Chicago Sugar Co. v. American Sugar Refining Co., 7 Cir., 176 F.2d 1, certiorari denied 338 U.S. 948, 70 S.Ct. 486, 94 L.Ed. 584; Cincinnati P.B.S. & P. Packet Co. v. Bay, 200 U.S. 179, 26 S.Ct. 208, 50 L.Ed. 428; Hedrick v. Perry, 10 Cir., 102 F.2d 802; Janet Realty Corp. v. Hoffman's Inc., 154 Fla. 144, 17 So.2d 114; Kentucky Nat. Gas Corp. v. Indiana Gas & C. Corp., 7 Cir., 118 F.2d 831; Schwartz v. Van Der Plate & Co., 132 N.J.Eq. 132, 27 A.2d 209; United States v. Addyston Pipe & Steel Co., 6 Cir., 85 F. 271, affirmed 175 U.S. 211, 20 S.Ct. 96, 44 L.Ed. 136, Restatement, Contracts, Sec. 516; 6 Corbin, Contracts Sec. 1389.

The quotations following from Florida cases are typical of the general attitude of American courts on this question:

> "Contracts entered into between parties, having as their objectives the removal of a rival competitor in a business, are not to be regarded as contracts in restraint of trade, because they do not close the field of competition but affect only the parties to the agreement." Janet Realty Corp. v. Hoffman's Inc., 17 So.2d 116.

In the recent case of West Shore Restaurant Corp. v. Turk, 101 So.2d 123, 129, the Supreme Court of Florida quoted approvingly from a Colorado decision as follows:

> " 'Where one is so lost to a sense of moral obligation as to accept a full consideration for his stock in trade and good-will, upon express condition that he refrain from again entering that business for a limited time, within a certain territory, and then immediately, having pocketed the fruits of the agreement, deliberately and wilfully ignores the controlling condition thereof, courts should certainly not hunt for legal excuse to uphold him in such moral delinquency.' Barrows v. McMurtry Mfg. Co., 54 Colo. 432, 449, 131 P. 430, 436."

Ancillary restrictions of this kind have, therefore, under facts such as appear here, been uniformly sustained as valid.

We come then to the issue which appellant admits was directly joined and decided against it below, to say that we think appellant makes too much of early and over-technical common law considerations distinguishing between covenants with respect to chattels and those with respect to land, too little of equitable considerations in dealing with both. As Owens in its brief points out, appellant has stated the question so as to make its and West India's right to the protection of a court of equity against breach of the covenant depend upon whether the restrictive covenant involved "runs with the boat" in the sense that certain covenants related to real estate have been considered by the courts to "run with the land."

The position of Owens and West India is that their right to protection at the hands of a court of equity depends not upon whether the covenant can be considered as "running with the boat" but upon principles of right and justice recognized by courts of equity under the influence of which a mere personal covenant restricting the use of property "not running with the land" or "with the boat" will be enforced in equity against purchasers taking with notice to

---

6. Bruce's Juices, Inc. v. American Can, 330 U.S. 743, 67 S.Ct. 1015, 91 L.Ed. 1219; Bookout v. Schine, Chain Theatres, Inc., 2 Cir., 253 F.2d 292; Productive Inventions v. Trico Prods. Corp., 2 Cir., 224 F.2d 678; Automatic Radio Mfg. v. Hazeltine Research, 1 Cir., 176 F. 2d 799.

the extent that the use of the property in violation of the covenant should be prevented by injunction or other appropriate equitable remedy. In support they cite the many cases collected in the annotation to Oliver v. Hewitt, 191 Va. 163, 60 S.E.2d 1, 23 A.L.R.2d 516; Vetzel v. Brown, Fla., 86 So.2d 138; and 32 C.J. "Injunctions", Sec. 315, p. 203, where it is stated:

"Where restrictive covenant with respect to the use of property, real or personal, is valid, it may be enforced by injunction but only as against one under obligation not to violate the covenant. Since a purchaser with notice gets title subject to the restriction he may be enjoined from using the property in violation of the restriction." [7] See also 43 C.J.S. Injunctions § 87.

Finally, they insist, citing cases in support, that if, as appellant seems to argue, the question of the validity of the covenant as against the mortgagee and the purchaser at a sale under it should be determined upon whether the covenant should be regarded not as a merely personal one but as one appurtenant to and running with the vessel, there is ample authority to support a reasoned view that even then appellant would be wrong.

■ The case, however, is not to be determined on that ground. It is rather to be determined by whether, under circumstances of the kind disclosed here, where the mortgagee, having itself furnished the money to make the trade with full knowledge of the covenant, is now undertaking to deprive the beneficiary of its benefits and at the same time to impose upon Owens, with whom it arranged to make the mortgage, the burden of the heavy loss which will follow its breach, equity will prevent appellant from taking this plainly inequitable, if not unconscionable course by holding it estopped [8] or otherwise bound by it in equity.

Under the circumstances obtaining here, a great deal more should be put forward by plaintiff, in support of its claim, to rid the vessel and the parties dealing with it of the covenant, than the dry as dust and technical common law distinction between chattels and realty. The distinction, which has its proper force in some situations, has no place or force here since the judgment did not attempt to add anything to or take anything from the binding force of the covenant but merely declared and applied to the facts of the case the controlling equitable principles.

The judgment is affirmed.

TUTTLE, Circuit Judge (dissenting).

With deference I dissent from that part of the opinion that holds that the appellant's mortgage is subject to the restrictive covenant to which it was not a party. The Court places its decision squarely upon the ground that it would be "inequitable, if not unconscionable" for the mortgagee of the vessel to be permitted to sell it at foreclosure sale freed of all restrictive covenants.

Believing, as I do, that there is a rational basis of continuing validity for the traditional difference between the principle of law which permits the burdening of real estate with restrictive covenants and that which favors the sale

---

7. To the same effect see 43 C.J.S. Injunctions § 87 at page 579 and 28 Am. Jur. "Injunctions" Sec. 89 et seq. and Secs. 101, 102, 103, and 104, "restrictions on trade or business", where the reason for granting such injunctions is stated to be to prevent the interference with obligations justly assumed by persons knowing of their existence. Cf. Lorillard Co. v. Weingarden, 2 Cir., 280 F. 238; In re Waterson Berlin & Snyder Co., 48 F.2d 704; Waring v. WDAS Broadcasting Station, 327 Pa. 433, 194 A. 631; Weissman v. Lincoln Corp., Fla., 76 So.2d 478; Tulk v. Moxhay, 2 Phil.Ch. 774, 41 Eng.Rep. 1143; Capitol Records v. Mercury Records, 2 Cir., 221 F.2d 657.

8. Palmer v. Chamberlin, 5 Cir., 191 F.2d 532; Prindiville v. Johnson & Higgins, 92 N.J.Eq. 515, 113 A. 915; Cf. Territory of Alaska ex rel. Com'r of Veterans' Affairs v. Guerin, D.C., 140 F.Supp. 440, 443; RFC v. Sun Lbr. Co., 4 Cir., 126 F.2d 731, 736; Cowell v. Colo. Springs Co., 100 U.S. 55, 25 L.Ed. 547; Jones v. Niebergall, Fla., 53 So.2d 918.

of tangible personal property unencumbered by even known restrictive covenants, I think it no more accords with equity and good conscience to permit the owner, Owens, to sit at the closing table and accept the purchase price from Tri-Continental on a mortgage executed by the purchaser without requiring inclusion of the restriction in the mortgage and thereafter to insist that it is binding on Tri-Continental than for Tri-Continental to be permitted to advance the money which is paid to Owens on a mortgage which is silent as to the restriction, but which is known to it, and later foreclose and sell the mortgaged property free of restriction.

In short, I think no such equity is here established to warrant the fashioning of a rule of law not heretofore shown to be applicable in the sale of chattels.

I would reverse and remand for a dismissal of the intervention.