# Richmond

BAYSIDE CORPORATION v. VIRGINIA SUPER FOOD FAIR STORES, INC.

-December 3, 1962.

Record No. 5504.

Present, All the Justices.

*Bertram S. Nusbaum* and *R. J. Alfriend, III* (*Nusbaum & Alfriend,* on brief), for the appellant.

*Alan G. Fleischer* (*Miles Cary, Jr.; Hirschler & Fleischer,* on brief), for the appellee.

WHITTLE, J., delivered the opinion of the court.

Bayside Corporation, hereinafter called Bayside, filed a motion for a declaratory judgment pursuant to Chapter 25, Title 8, Code of Virginia, 1957 Replacement Volume, against Virginia Super Food Fair Stores, Inc., hereinafter called Food Fair, in which it prayed for an adjudication that certain language in a contract of lease be held

illegal and unenforceable, in which motion it was contended that under the contract Food Fair "never acquired any interest or estate."

A demurrer to the motion was interposed by Food Fair, which the court sustained. From the order sustaining the demurrer Bayside appeals.

It is disclosed by the pleadings that the parties entered into an agreement dated September 29, 1960, wherein Bayside, the landlord, agreed to lease a building, to be used as a super market, to Food Fair as a tenant. The agreement was attached to plaintiff's motion. Attached to the agreement was Schedule "A", which is a map of a proposed shopping center. The schedule showed the following: (A) Bayside was developing a shopping center at Bayside, Virginia; (B) the shopping center was to consist of eight stores and to have an over-all area of 10.29 acres; (C) according to the legend thereon, Store "A" was to be leased to W. T. Grant; Store "C" to F. W. Woolworth; Store "F" to Peoples Drug Store, and Store "H" to Food Fair.

The carefully drawn lease consisted of fourteen printed pages, six schedules, and a nine-page typewritten rider.

It was shown on Schedule "A" that Bayside had entered into a lease with another super market, namely, Colonial Stores, in the immediate area, on the other side of the road from the shopping center. Paragraph 47 of the rider attached to the lease provides:

"47. Landlord warrants that the location of demised premises as set forth on Schedule 'A' will not in any way violate restrictions on the use of the shopping center, or of demised premises, as set forth in leases between landlord and the presently existing Colonial Store and drug store situate near Pleasure House Road, and Landlord agrees to save tenant [Food Fair] harmless of and from any and all claims arising by reason of such restriction."

Paragraph 29 of the lease provides, *inter alia:*

"Landlord warrants that by December 1, 1960, it will exhibit to tenant [Food Fair] signed lease agreements covering other portions of the shopping center of which demised premises are a part, made with other tenants who meet with the qualifications and requirements set forth in Schedule 'C' annexed hereto. * * *"

Schedule "C" provides:

"Pursuant to Paragraph 29, in addition to demised premises, there shall be leases for 380 front feet of stores including non-cancellable leases for minimum terms of fifteen (15) years for the following: 1. W. T. Grant; 2. F. W. Woolworth; 3. Peoples Drug."

Paragraph 29 further provides:

"If landlord fails to exhibit other leases within the time hereinabove set forth, or if landlord or any of such other tenants fails to comply with any of the foregoing provisions respectively applicable to them relating to completion of stores, occupancy and opening for business, tenant herein [Food Fair] shall have the right at its option to: (a) occupy demised premises * * *; or (b) terminate the lease at any time on written notice so long as such condition continues. * * *"

Paragraph 2 of the lease provides:

"If tenant [Food Fair] terminates this lease * * *, the landlord agrees it will not, for a period of three (3) years after such termination, permit, suffer or consent to the use of any portion of shopping center, of which demised premises is a part, as a super market; and this clause shall be self-operative and no further instrument shall be required of landlord to make same effective."

It is conceded in the pleadings that Bayside was unable to obtain a lease with F. W. Woolworth as warranted.

On February 13, 1961, Bayside wrote Food Fair requesting the elimination of the Woolworth Store and requesting a reduction of the shopping center from approximately 90,000 square feet to approximately 80,000 square feet. Food Fair refused to accede to these requested revisions by letter of March 13, 1961, which letter was filed as an exhibit.

By reason of Bayside's inability to obtain Woolworth as a tenant, the lease between Bayside and Food Fair was terminated, and Paragraph 2 of the lease became operative. Bayside concedes that Food Fair had a right to terminate its lease as provided in the contract but questions the validity of the restriction which it (Bayside) voluntarily imposed upon the use of the land.

The assignment of error relied on by Bayside is that the trial court erred in sustaining the demurrer filed by Food Fair. The questions involved, says Bayside, are:

"[1]. Whether or not the language in that portion of Paragraph numbered 2 in the written agreement between the parties * * * standing alone, is illegal and unenforceable in the light of the allegations made in complainant's motion (a) as a bald negative covenant, or (b) because it is so unjust, harsh and unreasonable that to declare it legal and enforceable would be to enforce a penalty on complainant that would be an undue hardship without justification, or (c) for the reason that it is an unreasonable restraint of competition or trade without statutory authorization, or dominant social or economic justification.

"[2]. Whether or not the said language should be considered a cloud on the title to complainant's land (1) as it is not ancillary either to a contract for the transfer of good will or other subject of property or to an existing employment or (2) that it unreasonably restricts the alienation or use of complainant's property."

The trial court, in a written opinion accompanying its order sustaining the demurrer, had this to say:

"The motion alleges the execution of the agreement, the inability of plaintiff to perform, the notice of defendant to terminate, and intention of defendant to rely upon the provision that the area which defendant was to use for a super market could not be used for such purpose for three years. To the motion defendants filed their demurrer.

"The provisions of the agreement under consideration constitute a covenant which is a personal covenant restricting the use of a part of the proposed shopping center for a term of 3 years for a super market. It is available for all other uses. The restriction only goes to its use, and then for only a short period of time. The restriction is within reasonable bounds, and is the clear expression of the parties. It affords only a fair protection to the interest of defendant, and does not interfere with the interest of the public.

"The suggestion in the motion that the rights of the public are interfered with from lack of a super market in this area is defeated by inspection of Schedule 'A' attached to the motion which shows a super market operated by Colonial Stores located across Pleasure House Road from the presently proposed shopping center.

"I am therefore of the opinion the demurrer should be sustained."

We agree with the conclusion of the trial court. The contract creates a reasonable personal covenant between the parties, and is binding both at law and in equity. *Oliver* v. *Hewitt*, 191 Va. 163, 166, 167, 60 S. E. 2d 1, 2, 3.

The covenant affords fair protection to the interests of Food Fair, and is not so broad as to interfere with the public interest. *Oliver* v. *Hewitt, supra*, 191 Va., at p. 168. It is limited in time. It extends for only three years from the date of termination, to-wit: March 13, 1961. The restriction is limited in space, applying only to the shopping center in question which covers approximately 92,900 square feet. It is a reasonable restriction between the parties, protecting Food Fair for a limited period of time by giving it the opportunity to open another super market in the same general area without being subjected to competition from the proposed shopping center.

The restriction was the means of guaranteeing performance of that which Food Fair desired, *i.e.*, a super market in the general area outside of Norfolk. If Bayside had performed those acts necessary to effect the landlord-tenant relationship then Food Fair would be required to comply with the provisions of the agreement. However, when Bayside failed to fulfill its part of the agreement to secure a lease from Woolworth, then Food Fair had a right to protect its interests under the agreement, and the reasonable restriction furnished the desired protection.

Clearly, the restriction does not interfere with the rights of the public. It only prohibits a super market in one shopping center. It does not prevent the sale of food or the use of the premises by any other type of store. Moreover, the public has super markets available elsewhere, including the Colonial store directly across the road from the proposed shopping center.

We hold that the lease agreement is reasonable and valid between the parties. This is in accord with our holding in *Oliver* v. *Hewitt, supra; Carneal* v. *Kendig* (1955), 196 Va. 605, 610, 612, 85 S. E. 2d 235, 237, 238; *Hercules Co.* v. *Continental Can Co.* (1955), 196 Va. 935, 939, 940, 86 S. E. 2d 128, 130, 131.

We agree wtih the reasoning in *Barrows* v. *McMurtry Mfg. Co.*, 54 Colo. 432, 448, 449, 131 P. 430, 436, where it is said:

"It may not be amiss to here suggest that there can be no sound or wholesome public policy, which operates in the slightest degree to lend approval to open disregard and violation of personal contracts entered into in good faith, upon good consideration. It is quite as important as a matter of public interest and welfare, that individuals be not allowed, with impunity, to transgress their solemn undertakings, advisedly entered upon, as it is that the public have protection in other respects."

This principle was recognized by us in *Development Co.* v. *Offutt*, 203 Va. 382, 385, 124 S. E. 2d 29, 31, and in *Renn* v. *Whitehurst*, 181 Va. 360, 365, 366, 25 S. E. 2d 276, 278, where we said:

" 'All courts profess to give effect to the plain intention of the parties, in imposing such restrictions, and should live up to their profession in good faith instead of seeking ingenious subtleties of interpretation by which to evade such restrictions.' "

The decree of the lower court is

*Affirmed.*