### Staunton

### KLAFF V. PRATT.

September 9, 1915.

1. CONTRACTS—*Restraint of Trade—Proof Required.*—Valid agreements in restraint of trade must be established by clear and satisfactory evidence in order to justify a court in restraining their breach by injunction. There must be no doubt or uncertainty in regard to their terms or the consideration upon which they are founded.

2. CONTRACTS—*Restraint of Trade—When Enforced—Contract by Stockholder—Validity—Consideration—Case in Judgment.*— While contracts in restraint of trade will be upheld and enforced if they are reasonable and afford only a fair protection to the interests of the party to whom they are given, and are not so large as to interfere with the interest of the public, a contract by a mere stockholder of a foreign corporation, restraining a citizen from engaging in a business in competition with that of the corporation, and not founded upon a purchase from the party restrained of good will or any interest in the business to be restrained, will not be enforced. One cannot make a valid contract in restraint of trade, no matter how limited as to space or time, where he does not purchase the good will or any interest in the matter, and the main object of which is to stifle competition. In the case in judgment, the complainant was a mere stockholder in a foreign corporation, the amount and value of his stock is not shown, the consideration for the contract is not clearly shown, and it is not shown that the business of the corporation in which he was a stockholder was co-extensive with the territory covered by the restriction.

Appeal from a decree of the Law and Chancery Court of the city of Norfolk. Decree for the complainant. Defendant appeals.

*Reversed.*

The opinion states the case.

*James G. Martin,* for the appellant.

*A. B. Seldner,* for the appellee.

CARDWELL, J., delivered the opinion of the court.

The bill in this cause was filed by Dwight M. Pratt, against Isaac Klaff to have specifically enforced by injunction an alleged agreement in writing between the parties, filed with the bill as "Exhibit A" and bearing date the 9th day of August, 1913. This agreement, under seal, sets out that in consideration of one dollar and other good and valuable considerations, paid to Klaff by Pratt, of Lowell, Massachusetts, Klaff for himself, etc., covenanted, promised and agreed to and with Pratt, his personal representatives, etc., that he, Klaff, for seven years from the date of the agreement, would not, "either alone or jointly, directly or indirectly, with any other person or persons or corporations, excepting the said Dwight M. Pratt, carry on, conduct, continue or engage in the business of rendering tallow, bones, grease, or dead animals, or the purchase and sale of hides, skins, furs, and wool, in the city of Norfolk, Virginia, or within a radius of forty (40) miles of said city of Norfolk. In case of my failure herein, I, the said Isaac Klaff, bind myself and agree to pay as liquidated damages the sum of five thousand dollars ($,-000.00) to the said Dwight M. Pratt, or his personal representatives or assigns, as aforesaid."

The bill then sets out that the plaintiff, on the date of said agreement, for some time prior and at the institution of this suit, was largely interested and had a considerable investment in the business of the Virginia Hide and Fur Co., Incorporated, under the laws of Virginia, and in the Norfolk Tallow Co., unincorporated, which two companies have their respective places of business in the city of Norfolk, the Virginia Hide and Fur Co., then and theretofore for several years past having been engaged principally in dealing

in hides, skins, furs and wool, and the business of the Nor-
folk Tallow Co. being that of rendering tallow, bones,
grease and dead animals, and dealing in same; that in the
conduct of the business of the two companies large sums of
money have been invested and a business of some magnitude
had been built up by them; that some years prior to August
9, 1913, the defendant was in the employ of the Virginia
Hide and Fur Co., and was performing in the said business
such services as were imposed upon him, etc., the Virginia
Hide and Fur Co., having previous to the month of May,
1912, been also engaged in the business of rendering tallow,
bones, grease and dead animals, and dealing in the same,
in the city of Norfolk, and in the county of Norfolk, Va.,
and the defendant having been in the employ of the said
company at the said time, was familiar with its methods
and manner of transacting its business; that subsequently
to the month of May, 1912, the businesses of the Virginia
Hide and Fur Co. and of the Norfolk Tallow Co. were
operated and owned practically by the same interests and
were closely identified and connected with each other. It
is then alleged that some time prior to the agreement filed
with the bill, and which is sought to be enforced in this
suit, the defendant agreed by an oral agreement with the
plaintiff, that if the latter would purchase or secure a pur-
chaser for certain real estate of the former, situated in
Norfolk city, Va., the defendant would enter into an agree-
ment with the plaintiff of the character and nature of the
agreement filed with the bill; that the plaintiff, pursuant
to said oral agreement, purchased of the defendant said
real estate, through his representative and agent, E. L.
Field, for a consideration of $5,300, of which sum $1,000
was paid in cash and the remainder secured on the prop-
erty, the same being the consideration and terms agreed
upon between the plaintiff and the defendant, and the title
to the property was, at the instance and request of plain-
tiff, conveyed by the defendant and his wife to the said

E. L. Field by deed dated August 9, 1913, and duly recorded, etc.; and that on said date, in consideration of the purchase by the plaintiff of said real estate, the defendant entered into the agreement filed with the bill and sought to be enforced.

The bill then alleges the breach of said agreement on the part of the defendant to be that he, on or about the 1st day of November, 1913, did engage either alone or jointly, directly or indirectly, with some other person, persons or corporations, excepting the plaintiff, in the conduct or carrying on of the business of purchasing and selling of hides, etc., in the city of Norfolk, and was at the filing of the bill in this cause so engaged in said business at a certain number in said city, where the defendant had an office or place of business for the purpose of carrying on or conducting the business referred to. It is further alleged that the object of the agreement filed with the bill was to prevent the defendant, who was familiar with the methods and manner of conducting the businesses in which the plaintiff was interested as aforesaid, from engaging in a like business, and that the true intent and meaning of the agreement is that the defendant would not engage in or carry on, or conduct, or continue, any one or more of such businesses either alone or jointly, directly or indirectly, with any other person or persons, etc., except the plaintiff, in the city of Norfolk or within a radius of forty (40) miles thereof for a period of seven (7) years from and after the date of the agreement, and that the plaintiff had been *reliably informed* that the defendant, either alone or jointly, or with some other person or persons, etc., anticipated or was about to engage in the city of Norfolk, or within a radius of forty miles from the city, in the business of rendering tallow, bones, grease and dead animals, in further violation and disregard of his said agreement, etc.

The following paragraph'also appears in the bill:

"That your orator upon ascertaining the violation by the said Isaac Klaff of his said agreement, brought a suit at law in this honorable court, returnable to the first November rules, 1913, for the purpose of recovering in said suit a judgment for five thousand dollars ($5,-000.00), the amount of damages which the said Klaff agreed to pay to your orator in case of his violation of the terms and conditions of the said agreement. Since the bringing of the said suit, however, your orator has been informed, and therefore charges and alleges that, if a judgment in said suit were obtained in his favor for the said sum of five thousand dollars ($5,000.00) against the said Isaac Klaff, he would be unable to collect the said judgment from the said Isaac Klaff, and that the said Isaac Klaff being unable to pay the said judgment, would be insolvent. Under these circumstances, your orator has had dismissed the said suit above referred to and the said suit is no longer pending or on the docket of this honorable court."

It is further alleged that unless the prayer of the bill be granted, the plaintiff would sustain irreparable damage and the relief prayed is that the defendant be, pending this litigation and perpetually, restrained and enjoined from the violation of the terms and conditions of said agreement of August 9, 1913, and from carrying on, conducting, continuing or engaging in the business of rendering tallow, bones, grease and dead animals, or the purchase and sale of hides, skins, furs and wool, or any or either of them, in the city of Norfolk, or within a radius of forty miles of said city, for a period of seven years from and after the date of said agreement, either alone or jointly, etc.

The defendant demurred to the bill upon a number of grounds stated in writing, which demurrer was overruled

and the defendant then filed an answer and later an amended answer, his answer denying most of the material allegations of the bill, and particularly asserting that the plaintiff was manager of concerns that were part and parcel of a monopoly in the city of Norfolk and elsewhere conducting the businesses of the kind mentioned in the alleged contract filed with the bill in this case as "Ex. A;" that said contract was a part of the scheme of said concerns to monopolize these businesses, and that such monoply was inimical to public policy; that the claim made in the bill that the true consideration for the contract "A" was the buying of certain real estate by the plaintiff from the defendant in the city of Norfolk was untrue, as said real estate deal and the making of said contract "A" were in no way connected as part of one and the same transaction based upon the same consideration, but that the actual consideration for the contract "A" was an arrangement by which the plaintiff was to pay to the defendant, not later than the 14th day of August, 1913, the amount that defendant then claimed was due him as back salary, and as to which plaintiff had made some dispute, and which back salary was not in fact paid to defendant on or before the 14th day of August, 1913, so that defendant did not intend contract "A" to be delivered, but said back salary was paid on the 1st day of November, 1913, long after defendant had openly gone into the business of buying hides in the city of Norfolk, as was well known to the plaintiff, and the defendant notified the plaintiff on November 1st when he accepted said back salary, that then he had gone into business and intended to remain in business and that by accepting this back salary he did not intend to be understood as promising to go out of business.

It is further claimed in his answer that defendant had not violated any of the provisions of the alleged contract with the plaintiff; that the agreement, if enforceable at

all, by its terms applied only to the buying and selling of hides, etc., in the city of Norfolk, or within a radius of forty miles thereof, nothing being contained in the agreement to prevent him from purchasing hides, etc., for shipment to points outside of said territory, and that such hides, etc., as he, the defendant, had bought since the date of said agreement were for shipment to northern markets and were shipped to northern markets and there sold.

On the 19th of May, 1914, the cause came on for hearing in the Court of Law and Chancery of Norfolk city, upon the pleadings therein and depositions that had been taken and filed on behalf of the respective parties, and was argued by counsel and submitted to the court for decision, but before the court rendered its decision and during the same term of the court, the defendant asked leave to amend the eighth paragraph of his answer theretofore filed in the cause, the proposed amendment being for the purpose of pleading that plaintiff's action at law theretofore in the same court to recover the liquidated damages stipulated for in the agreement "A," having been dismissed by an order of the court reciting that, "By agreement of parties this case is dismissed," the said order had the force and effect of a case dismissed agreed and operated as a perpetual bar to any further action or proceeding upon the said agreement either at law or in equity, so that if the plaintiff ever had any cause of action under or by virtue of said alleged agreement, which is denied, the same was then barred by reason of said order dismissing plaintiff's common law action on the agreement; but the court refused to allow the defendant to so amend his answer and entered its final decree in the cause, from which the defendant appeals, and which enjoins and restrains the defendant for a period of seven years from August 9, 1913, "from carrying on, conducting, continuing or engaging, either alone or jointly, directly or indirectly, with any per-

son or persons, or corporation, excepting the said Dwight M. Pratt, in the business of the purchase and sale of hides, skins, furs and wool, in the city of Norfolk, Virginia, or within a radius of forty (40) miles of said city of Norfolk."

The defendant in his petition for this appeal assigns as error: (1) The action of the court in overruling the demurrer to the plaintiff's bill; (2) the refusal of the court to allow the defendant to amend the eighth paragraph of his answer (above mentioned) ; and (3) the ruling of the court in deciding the cause on the final hearing in favor of the plaintiff, and enjoining and restraining the defendant, as prayed in plaintiff's bill.

In the view that we take of the case, it is only necessary to consider (1) whether or not the agreement in question is reasonable as between the parties; and (2) if so, whether or not the agreement is injurious to the public interest by reason of its effect upon trade and, therefore, void. These questions may be considered together.

"Whether or not the restraint is reasonable is to be determined by considering whether it is such only as to afford a fair protection to the interests of the party in favor of whom it is given, and not so large as to interfere with the interest of the public." *Merriman* v. *Cover,* 104 Va. 428, 51 S. E. 817, and authorities cited.

The opinion in the case just cited further says: "The general rule is that a party who seeks to enforce a contract in restraint of trade must show that it is reasonable . . . . ."

The authorities generally are to the effect that where the tendency of the agreement between the parties is to lessen competition or raise the price of goods or commodities, it is injurious to the public, 9 Cyc. p. 535, where a number of the authorities are cited, and this authority

maintains that the same principle applies where there is injury or threatened injury to the public.

"Valid agreements in restraint of trade must be. established by clear and satisfactory proof in order to justify a court in restraining their breach by injunction. There must be no doubt or uncertainty in regard to their terms or the consideration upon which they are founded." 9 Cyc., at p. 541.

We have set out in this opinion, perhaps at greater length than was necessary, the allegations of plaintiff's bill as to what was the consideration for and the purpose and intent of the agreement which he seeks to enforce by injunction, and as to what interests he had to protect in the business of the purchase and sale of hides, skins, furs and wool, in the city of Norfolk, Va., or within a radius of forty miles thereof, the purpose of this extended statement being to show that the allegations of the bill are indefinite, not only as to the consideration upon which the defendant signed the agreement, but as to what interests the plaintiff had to protect by the agreement.

The agreement is that the defendant, a citizen of Norfolk, Va., agrees with a citizen of the State of Massachusetts that he will not for a period of seven years from the date of the agreement, engage in either of two different kinds of business in the city of Norfolk, Va., or within a radius of forty miles thereof; there being nothing in the agreement to show that the restraint imposed upon the defendant is necessary to protect the interests of the plaintiff, and nothing to show that the plaintiff had interests in said business to protect. When we come to examine the evidence in the case, it fails to show that the restraint sought by the agreement to be imposed upon the defendant is such only as is necessary to afford a fair protection to the interests of the plaintiff, but it does show, as we think, that the agreement is injurious to the public by

reason of its effect upon trade, in that it tends, as was
doubtless its purpose, to lessen competition and affect prices
of the several commodities mentioned in the agreement.
The plaintiff had purchased no business and good will of
trade from the defendant; he was not, when said agree-
ment was entered into, or when this suit was instituted,
engaged in business of any kind in Norfolk city or within
forty miles thereof, and all that is shown is that at the
time he testified in this case plaintiff owned stock in a
foreign corporation which operated as one concern the
Norfolk Tallow Co. and the Virginia Hide and Fur Co., in
the city of Norfolk. On cross-examination plaintiff was
asked: "What is the Whitman & Pratt Rendering Com-
pany? A. A corporation.

"Q. A corporation of the State of Maine? A. Yes, sir.

"Q. And it is doing business in the city of Norfolk
under the name of the Norfolk Tallow Company? A.
Yes, sir.

"Q. You have testified that the Virginia Hide and Fur
Company and the Norfolk Tallow Company are now owned
and operated by the same interests? A. Yes, sir.

"Q. And that has been true ever since your purchase
of the Virginia Hide and Fur Company in 1912, has it not?
A. Yes, sir.

"Q. Prior to that time these two concerns were com-
petitors in Norfolk, were they not? A. Yes, sir."

We have found no case holding valid a contract in favor
of a mere stockholder in a corporation designed to prevent
another from engaging in business in competition with the
corporation; but even if this were permissible, one assert-
ing such a contract must, under the rule of law recognized
in this jurisdiction, show that the restraint is not only
reasonable, but does not go beyond what is necessary to
afford a fair protection to his own interests. Certainly it
is the plaintiff's interest that is to be protected, not that
of the corporation. In this case all that the evidence shows

is that the plaintiff, when he testified on his own behalf, owned stock of the corporation, how much not being stated, and whether the stock is of any value or will ever be is not shown, but is left to conjecture, so that upon this slender show of interest that he designed to protect by the contract in question, the plaintiff asks that a court of equity enjoin the defendant from engaging in any of the several different kinds of business referred to in the contract for seven years, in the city of Norfolk, Va., or within a radius of forty miles thereof, notwithstanding the interest which the plaintiff designs to protect is that of the ownership of shares of the capital stock of a foreign corporation which is conducting a business in the city of Norfolk under an assumed name, and there is nothing in the proof in the case to show that the business of this concern extends at all beyond the limits of the city of Norfolk, the city of Portsmouth, and possibly the county of Norfolk, where it operates a rendering plant to take care of the carcasses of dead animals for the two cities named.

The decree of the trial court complained of excludes the defendant from engaging in or even accepting employment for seven years within a territory embraced in a radius of forty miles of Norfolk city in a business for which he is perhaps best fitted, by which he can best provide for his family, and in which it may be that he can be most useful in the community, when the evidence in the case, as it appears to this court, shows that such restraint upon the defendant is wholly unnecessary to the protection of the plaintiff or the business of the corporation in which he claims an interest merely as a stockholder. Unquestionably, there is abundant authority for upholding and enforcing contracts that operate in restraint of trade where they are reasonable and afford only a fair protection to the interests of the party to whom it is given and not so large as to interfere with the interest of the public, but

such is not the case that is presented on this record. Here the plaintiff asks and the decree of the court appealed from extends the established doctrine with respect to contracts in restraint of trade ancillary to the purchase of a business, so that a stockholder may contract with a person that such person shall not himself alone, or even in the employ of another person or corporation, compete with a corporation in which the stockholder owns shares, and enforce such a contract in a court of equity, without showing by clear and satisfactory proof that the contract is reasonable and affords only a fair protection to the interests of the party in whose favor it is given, and not so large a restraint upon the other party as to interfere with the interest of the public. As remarked, we know of no authority supporting that proposition of law.

Elliott, in his work on Contracts, vol. 2, sec. 814, says: "The general rule to the effect that a contract in restraint of trade will be enforced where the restraint is no more extensive than is reasonably required to protect the interests of the party in whose favor it is given and not so large as to interfere with the interest of the public, has already been stated. This rule implies that the contract must be one in which the main purpose is to secure the covenantee that measure of protection needed by him, the covenant in restraint of trade being merely ancillary or incident to this main purpose. The agreement restraining trade must be incidental to and in support of the contract or sale by which the one in whose favor it runs acquired some interest in the business he seeks to protect. One cannot make a valid contract in restraint of trade, no matter how limited as to space or time, where he does not purchase the good will or any interest in the matter and the main object of which is to stifle competition."

In the light of the authorities cited, applied to the evidence in this record, we are of opinion that the decree of

the trial court is erroneous, and it will, therefore, be reversed and annulled, and this court will enter the decree that should have been entered by the trial court, dismissing the bill of the plaintiff with costs to the defendant.

*Reversed.*