## LAW AND EQUITY COURT OF THE CITY OF RICHMOND

Richard Eugene Landrum
and Carl Louis Kempf, Jr.

v.

Larry E. Moore

October 3, 1972

By JUDGE A. CHRISTIAN COMPTON

Enclosed you will find a copy of the final decree entered today which denies the prayer of the bill of complaint.

The essence of the court's decision is that under the facts and circumstances shown by the evidence in this suit, it would be unreasonable to enjoin the defendant from conducting (through Continental Investigator, Inc.) a security business on the premises of the Giant Open Air Markets in the Richmond area.

This suit arises out of a contract dated May 25, 1972, under which, effective on May 29, 1972, the plaintiffs agreed to purchase from the defendant a security service business which the defendant had operated in Richmond under the trade name of Metro Richmond Security Service. Plaintiff's exhibit 7. The agreement provides, inter alia, that the business is purchased "as a going concern" and that for two years from the date of closing the defendant shall not "[d]irectly or indirectly engage in the private investigative detective or security business in the City of Richmond, Virginia, or within a thirty-five mile radius of the city limits of Richmond, Virginia, neither [sic] as an employee, proprietor, partner or stockholder." P-7, paragraph 8(f).

Under the Addendum to the contract, the plaintiffs agree to employ the defendant for 12 weeks "for the purpose of court appearances on behalf of client Giant Open Air Markets in the matter of checks on which warrants are now outstanding."

On March 24, 1972, the plaintiff Landrum contacted the defendant and offered to purchase the defendant's business for $6,000.00. Thereafter, the plaintiffs consulted counsel and after some negotiation, which included the preparation of several drafts of an agreement, the parties executed the contract in question. The sale price was $5,000.00, of which $4,000.00 was paid upon closing, the balance to be paid in 90 days. P-7, paragraph 6.

During the period between March when the negotiations started, and the May 29 closing, the defendant was instrumental in obtaining a charter on April 18 to conduct a security business for Continental Investigator, Inc., (P-17) and in applying for group insurance coverage for the corporation with Blue Cross on May 23 to be effective on June 1 (P-6). Continental operates out of the defendant's home in this city and also has an office in Charlottesville.

The spark which ignited this suit is the fact that Continental continues to do the security work for Giant Open Air Markets within the restricted area of the covenant aforesaid. While the plaintiffs have other clients, it is obvious that the Giant account is more lucrative. The defendant stated during the negotiations that the weekly gross income from this account was $1,253.00 (P-15). While the defendant maintains that he is only doing the "check collecting" now for Giant and that he is only a "consultant" to Continental, it is obvious from all the evidence that he continues to operate at the same locations for Giant and is performing the same services for Giant, the only change being that now he wears a different uniform.

Confronted with this apparent open and flagrant violation of their written contract, the plaintiffs have elected to affirm the contract, to seek a permanent injunction, and to seek compensatory and punitive damages.

The defendant does not contest the authenticity of the writing introduced as the contract, although at one point in his testimony he said the writings had been "switched." His main argument is that since the evidence shows that Giant would never employ the plaintiffs to

do their security work, the effect of an injunction which would prevent the defendant from representing Giant would have no beneficial effect on the plaintiffs and would only mean that some third party would render security services to Giant. In short, the defendant argues that to enforce paragraph 8(f) of the contract by injunction would be destructive only.

The evidence is not sufficient to show that the defendant violated any other provisions of paragraph 8. The plaintiffs do not complain that the defendant is performing security services anywhere else in the restricted area except at the Giant stores.

The sole issue here is whether the restrictive covenant in question is enforceable. The court has concluded that it is not insofar as the Giant account is concerned. This decision has no effect upon the validity of any of the other provisions of this binding contract and it has no effect upon the validity of paragraph 8(f) except as it relates to the premises of Giant in the restricted area. No injunction is granted directing the defendant to comply with any other provisions of the contract because either there is no claim of such a violation or the evidence is not sufficient to prove the violations alleged in the bill of complaint.

A covenant not to compete is basically an agreement in restraint of trade. The early common law of England dealt with such "contract in restraint of trade" as being completely void as against public policy. 54 Am. Jur. 2d *Monopolies, Etc.*, § 511, p. 958. The modern rule is that such an anticompetitive covenant when supported by consideration and ancillary to a lawful contract is enforceable if reasonable and consistent with the public interest. *Ibid.*, p. 959. See *Worrie* v. *Boze*, 191 Va. 916, 926 (1951); *Stoneman* v. *Wilson*, 169 Va. 239, 245 (1937). This type of restraint is less limited between seller and buyer than between employer and employee. *Linville* v. *Servisoft of Virginia*, 211 Va. 53, 55 (1970); *Richardson* v. *Paxton Co.*, 203 Va. 790, 795 (1965). See also the exhaustive and delightfully written opinion of Judge Hoover in *Arthur Murray Dance Studios* v. *Witter* (Ct. of Common Pleas, Ohio 1962) 105 N.E.2d 685, 703 and 704.

In Virginia, as in the majority of the other states, three criteria are used by the courts in passing upon

this type of covenant: (1) Is the restraint, from the standpoint of the purchaser, reasonable in the sense that it is no greater than is necessary to protect the purchaser in some legitimate business interest? (2) From the standpoint of the seller, is the restraint reasonable in the sense that it is not unduly harsh and oppressive in curtailing his legitimate efforts to earn a livelihood? and, (3) Is the restraint reasonable from the standpoint of a sound public policy? *Meissel* v. *Finley*, 198 Va. 577, 580 (1956); *Merriman* v. *Cover*, 104 Va. 428, 436 (1905).

The second and third criteria aforesaid can be summarily disposed of in a manner favorable to the plaintiff. The restraint is not unduly harsh and oppressive in curtailing the defendant's legitimate efforts to earn a livelihood. The evidence discloses that the defendant engages in at least one other business in addition to the security business. Moreover, he has opened a security office in Charlottesville outside of the restricted area in order to pursue the same line of work involved here.

The public will not be adversely affected if the defendant were prohibited from rendering security services for the next two years in the Richmond area. It is common knowledge that in recent years in this area a great number of persons and organizations have commenced to offer this same type of security service. The evidence fails to reveal any lack of such service to meet the public demand therefor.

However, the evidence is just as conclusive that the restraint is unreasonable, from the standpoint of the plaintiffs, in the sense that it is greater than is required for their protection in their security business. Restatement of Contracts, § 515(a). See also *Klaff* v. *Pratt*, 117 Va. 739, 750 (1915); 17 C.J.S. *Contracts*, § 247, p. 1124. Williston on Contracts (Revised Edition) § 1636, p. 4580.

The evidence offered by the plaintiffs shows that they have no opportunity to obtain Giant as a client. Therefore, to restrict the defendant from representing Giant in the Richmond area would accomplish nothing, insofar as the plaintiffs are concerned. It would merely result in the loss by Giant of the services of a security company considered competent and satisfactory by the client. The witness Warren, who is the Security Manager of the Giant

chain of stores, testified that the defendant has been doing the security work for his Richmond stores satisfactorily for about one year; that the defendant and the plaintiffs had led him to believe that the defendant was selling his interest in the business to the plaintiffs but that the defendant would continue to do his (Warren's) work; that when he found out the true facts in the letter of May 29, 1972, (P-2) he then by letter of June 2 (P-3) notified the plaintiffs that he would not employ them; and, that he reaffirmed this position by his letter of June 28 (P-5). This letter was written after the plaintiffs on June 13 sent Warren a bill, which included a charge for services he did not authorize. (The plaintiffs had worked for Warren for a few weeks in Richmond.) It is obvious from all of Warren's testimony that he has no intention now or in the future of hiring the plaintiffs again.

The plaintiffs' witness Phelps, the store manager of Giant at its Maywill Street outlet, testified that he, too, understood from what the plaintiffs and the defendant told him that the defendant "was bringing the other two people in with him in the corporation" and that the defendant would "be the president and would have the controlling interest." He further testified that "the understanding we (Giant) had with the three of them was that the defendant would do our work." Phelps, too, has no intention to deal with the plaintiffs again.

Considering the subject matter, the nature of the business, the situation of the parties and all the circumstances of the case, the court concludes that to prohibit the defendant from representing Giant in the Richmond area would result in restraint which is greater than necessary to protect the plaintiffs in the pursuit of their legitimate business interest. Accordingly, in this respect, the covenant will not be enforced. Williston on Contracts (Revised Edition) §§ 1659 and 1660, pp. 4679-4685.