Present: All the Justices

CHESTERFIELD MEADOWS SHOPPING CENTER
 ASSOCIATES, L.P., ET AL.

                                              OPINION BY
v.  Record No. 012519         JUSTICE LAWRENCE L. KOONTZ, JR.
                                         September 13, 2002
A. DALE SMITH


          FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                     William R. Shelton, Judge

     In this appeal, we consider whether the chancellor

correctly determined that a change in conditions rendered a

restrictive covenant on the use of land null and void.

                            BACKGROUND

     This is the second time that the validity of the

restrictive covenant under consideration has been the subject of

an appeal before this Court.  In Smith v. Chesterfield Meadows

Shopping Center, 259 Va. 82, 86, 523 S.E.2d 834, 836 (2000), we

reversed the chancellor's judgment sustaining a demurrer and

remanded the case for further proceedings.  The present appeal

arises from those proceedings.  Most of the pertinent facts, but

not all, are either stipulated or undisputed by the parties.

     In 1979, Judge Ernest P. Gates and his wife, Virginia Y.

Gates ("the Gates") owned and occupied an historic home known as

"Wrexham Hall" located on a 5.5-acre tract on the south side of

Centralia Road at its intersection with State Route 10 in

Chesterfield County.  Richard M. Allen owned an undeveloped

tract, consisting of approximately 5.5 acres, on the north side of Centralia Road directly opposite from the Gates' property.

On April 17, 1980, Allen and the Gates executed a restrictive covenant affecting Allen's property. This covenant provided that Allen's property was to be "used only for the purposes mentioned and allowed by the Special Conditional Use Permit granted by the Board of Supervisors on November 28, 1979, in case # 79S101A for an office complex as reflected in the official minutes of the meeting." This covenant purportedly would run with the land for a period of sixty years from the date of the covenant. On July 14, 1980, Allen recorded this covenant in the land records of Chesterfield County.

Thereafter, Allen conveyed approximately 2 acres of his property to Centralia Associates by deed dated December 30, 1980. Centralia Associates then conveyed this acreage to A. Dale Smith by deed dated January 13, 1981. Both deeds were recorded in the land records of Chesterfield County on January 26, 1981.

On February 28, 1985, the Gates conveyed their property to Pioneer Financial Corporation subject to a restrictive covenant requiring that Wrexham Hall remain on the property or be relocated to "another residential location." Subsequently, Wrexham Hall was appropriately relocated, and its former site was rezoned to "Commercial" use. Pioneer conveyed a portion of

2

the property to Chesterfield Meadows Shopping Center Associates, L.P. and Ukrop's Super Markets, Inc. (collectively "Chesterfield").[1]  Chesterfield constructed a shopping center on its property.

On February 26, 1996, Smith entered into a letter of intent with Trion Ventures, L.C. for the sale of her property.  Trion Ventures planned to build a Walgreen's drug store on the property.  On April 23, 1997, the Chesterfield County Board of Supervisors approved the rezoning of Smith's property from "Agricultural" to "Neighborhood Business," which would have permitted the proposed development of the drug store to go forward.

Smith sought an agreement from Chesterfield to release the restrictive covenant and allow the commercial development of her property.  In a letter dated April 9, 1998, Chesterfield advised Smith that it would not agree with her to release the restrictive covenant.

On June 24, 1998, Smith and Allen, whose retained portion of the property had been rezoned for commercial development, filed a bill of complaint in the Circuit Court of Chesterfield County, pursuant to Code § 55-153, seeking to have the April 17,

---

[1] Another portion of the property was conveyed to Taco Bell Corporation.  That corporation, however, is not a party to this appeal.

1980 restrictive covenant declared void.  The bill of complaint alleged that the restrictive covenant was "intended to protect the historical nature of Wrexham [Hall]" and that changed conditions warranted that the covenant be declared void.

Following our remand in the first appeal, Allen, who had sold his retained portion of the property, withdrew from the action.  On April 21, 2000, Smith filed an amended bill of complaint, alleging that the restrictive covenant was intended to protect from commercial development not only Wrexham Hall, "but also the area near the historic Chesterfield Courthouse" in the vicinity of Wrexham Hall.[2]

An ore tenus hearing was held on April 2, 2001.  In addition to the stipulation of the above recited facts and various exhibits, the chancellor received the testimony of several witnesses.  Judge Gates testified that he initially objected to the 1979 rezoning of Allen's property and the

---

[2] Smith further alleged that the restrictive covenant was personal only because there was no horizontal privity between the Gates and Allen when the covenant was created and, thus, Chesterfield could not enforce the covenant as the Gates' successor-in-interest.  The chancellor did not reach this issue, and Smith has not raised it as an alternative basis for upholding the chancellor's judgment.  Accordingly, we express no opinion on the issue.  We note, however, that the enforceability of a restrictive covenant to the benefit or burden of remote successors-in-interest is subject to strict elements of proof, including proof of horizontal privity between the original parties to the covenant.  See Sonoma Development, Inc. v. Miller, 258 Va. 163, 167 and n.3, 515 S.E.2d 577, 579 and n.3 (1999).

granting of a special use permit for an office complex, but ultimately agreed to support Allen's request for that rezoning if Allen would agree to execute the restrictive covenant. He explained that the use of Allen's property for an office complex would conform to the use of other properties in the vicinity of Wrexham Hall and other historic buildings nearby.

Judge Gates further testified that he objected to the commercial development of Allen's property because he "wanted to protect Wrexham [Hall]." When asked on cross examination whether he would agree that his purpose in obtaining Allen's agreement to the covenant was not focused solely on Wrexham Hall, but rather on the entire vicinity, he replied that "I would like to think it was, but I'm not sure. I think primarily my interest was [in] Wrexham [Hall], because that's what I owned and it was something I wanted to protect." Allen also testified that he had agreed to the covenant to resolve Judge Gates' objection to his rezoning request.

During Smith's testimony at the hearing, a video tape was played reflecting the extensive commercial development which has occurred since 1979 along Route 10 in the vicinity of Wrexham Hall's prior location. In addition to Chesterfield's shopping center and another shopping center, that development included, among other uses, several banks, service stations, a drug store, two grocery stores, and five fast-food restaurants.

In an opinion letter dated July 31, 2001, the chancellor, relying particularly upon the testimony of Judge Gates, found that the primary purpose of the 1979 restrictive covenant was to protect Wrexham Hall against commercial development of property in the area in which it was then located and "to some extent" to protect one other historic property. After noting that Wrexham Hall had been relocated and replaced by Chesterfield's shopping center, the chancellor further found that much of the surrounding area had been "transformed [from] once serene farmland, to a thriving commercial area." Based upon this change in local conditions, the chancellor concluded that "the essential objects and purposes of the [covenant] are practically destroyed, and the covenant is null and void."[3]

On August 13, 2001, the chancellor entered a final decree of judgment for Smith, incorporating by reference the findings of fact and conclusions of law as stated in the July 31, 2001 opinion letter. By order dated February 25, 2002, we awarded Chesterfield this appeal.

---

[3] The chancellor further concluded that Smith was not barred by estoppel, laches, or the doctrine of unclean hands in seeking relief in equity, as Chesterfield had contended. We agree with the chancellor's judgment on these issues and, in light of our view of the dispositive issue in this appeal, need not address further Chesterfield's assignment of error thereto.

DISCUSSION

We begin our analysis using well established principles of appellate review.  "When the chancellor hears evidence ore tenus, his decree is entitled to the same weight as a jury verdict, and we are bound by the chancellor's findings of fact unless they are plainly wrong or without evidence to support them."  Hoffman Family, L.L.C. v. Mill Two Associates Partnership, 259 Va. 685, 696, 529 S.E.2d 318, 325 (2000).

In our prior review of this case, we concluded that the covenant between the Gates and Allen was "silent as to [its] purpose" and, thus, "the introduction of evidence on that subject [was not prohibited], since such evidence would not be considered a factual allegation contradicted by the terms of the document."  Smith, 259 Va. at 85, 523 S.E.2d at 836. Nonetheless, Chesterfield contends that the chancellor erred in determining that the purpose of the restrictive covenant was other than as "stated on the face of the covenant."  In support of this contention, Chesterfield points to Allen's admitted motivation to gain the Gates' support for his request to obtain a special use permit.[4]  Thus, Chesterfield concludes that, regardless of the Gates' motivation, the purpose of the

_____

[4] The Board of Supervisors made the creation of the restrictive covenant a condition of the rezoning of Allen's property and the granting of the special use permit in 1979.

restrictive covenant was to restrict the use of Allen's property to office development and "not [for] some broader purpose relating to preservation of Wrexham [Hall] or any other property."  We disagree.

"Valid covenants restricting the free use of land, although widely used, are not favored and must be strictly construed . . . .  Substantial doubt or ambiguity is to be resolved against the restrictions and in favor of the free use of property."  Woodward v. Morgan, 252 Va. 135, 138, 475 S.E.2d 808, 810 (1996).  The restrictive covenant here did not provide reciprocal benefits to the Gates' property and to Allen's property.  Whatever Allen's motivation for agreeing to the covenant may have been, the covenant placed a significant burden on the use of his property by Allen and by Smith, Allen's successor-in-interest, by restricting commercial use of the property.  Judge Gates testified that such a restriction would benefit his property.  Accordingly, we are of opinion that the chancellor quite properly gave greater weight to the testimony of Judge Gates, a party who received the direct benefit of the restrictive covenant, in determining that the purpose of the covenant was the protection of Wrexham Hall and another historic property in the immediate vicinity.

Chesterfield next contends that the chancellor erred in awarding relief "based upon facts which are at variance with

8

plaintiff's pleadings." Chesterfield asserts that the chancellor's finding that the purpose of the restrictive covenant was limited to protecting only Wrexham Hall and one other property is contrary to Smith's assertion in the amended bill of complaint that the Gates were concerned with the preservation of a much broader area surrounding their property and, thus, cannot support a judgment in her favor. Again, we disagree.

The cases Chesterfield cites in support of this proposition are all inapposite to the facts of this case. In each of those cases, the facts pled did not support the legal theory for the judgment sought or rendered. See, e.g., Ted Lansing Supply Co. v. Royal Aluminum, 221 Va. 1139, 1142, 277 S.E.2d 228, 230 (1981) (judgment founded upon implied warranty could not be rendered where only express warranty was pled). Here, by contrast, the legal theory under which Smith sought relief was applicable both to the facts as pled, and the more limited view of the facts actually proved as found by the chancellor. So long as those facts were sufficient to support the legal theory of the relief sought, the chancellor did not err in awarding that relief.

Finally, we turn to Chesterfield's contention that the chancellor erred in concluding that Smith carried her burden to prove that changed conditions have defeated the purpose of the

9

restrictive covenant rendering it null and void. The determination of the degree of change necessary to have this effect is inherently a fact-specific analysis in each case. However, we have previously made it clear that such a change "must be so radical as practically to destroy the essential objects and purposes of the [covenant]." Booker v. Old Dominion Land Co., 188 Va. 143, 148, 49 S.E.2d 314, 317 (1948).

The undisputed facts in the record clearly support the chancellor's conclusion that the area surrounding the former location of Wrexham Hall had been "transformed [from] once serene farm land, to a thriving commercial area." Such a radical change satisfies the standard articulated in Booker and its progeny, and we are unable seriously to entertain the notion that any purpose consistent with the covenant would be served by permitting the restriction imposed thereby on the use of Smith's property to continue. Accordingly, we hold that the chancellor did not err in ruling that Smith established the necessary change in conditions to destroy the purpose of the covenant.

CONCLUSION

For these reasons, we will affirm the judgment of the chancellor declaring the restrictive covenant agreement between the Gates and Allen to be null and void.

Affirmed.

10