**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-1539**

DOUBLE DIAMOND PROPERTIES, LLC; CYPRESS POINT CITGO, INCORPORATED, trading as Bayside BP,

        Plaintiffs - Appellants,

    v.

BP PRODUCTS NORTH AMERICA, INCORPORATED, f/k/a Amoco Oil Company,

        Defendant - Appellee,

    v.

PAPCO, INCORPORATED,

        Movant.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Walter D. Kelley, Jr., District Judge. (2:06-cv-00226-WDK)

Submitted: March 20, 2008        Decided: May 13, 2008

Before WILKINSON, NIEMEYER, and GREGORY, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Peter G. Zemanian, ZEMANIAN LAW GROUP, Norfolk, Virginia, for Appellants. David M. Harris, Lizabeth M. Conran, GREENSFELDER,

HEMKER & GALE, P.C., St. Louis, Missouri; William F. Devine, WILLIAMS MULLEN, Norfolk, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Double Diamond Properties, LLC ("Double Diamond"),[*] a Virginia Limited Liability Company that owns and operates a gas station on Haygood Road in Virginia Beach (the "Haygood station"), appeals the district court's order granting summary judgment on Double Diamond's complaint for declaratory relief and damages under Virginia state law against BP Products North America, Incorporated, formerly known as Amoco Oil Company ("BP"), a Maryland corporation with its principal place of business in Illinois. Double Diamond seeks relief from the operation of a restrictive covenant in favor of BP in the deed to a parcel of property where Double Diamond operates the Haygood station. The district court found that the deed restriction was enforceable as it is applied against Double Diamond. We affirm.

Double Diamond purchased the Haygood station in January 2006 from Canal Enterprises, LLC ("Canal"). Canal purchased the Haygood station from Amoco in 2001, subject to a deed restriction that provides in pertinent part:

> The Grantee herein covenants and agrees, for itself, and its heirs, executors, grantees, successors and assigns, that no part of the real estate herein conveyed, shall be used by said Grantee, its heirs, executors, grantees, successors and assigns, for the purpose of conducting or

---

[*]Cypress Point Citgo, Incorporated, trading as Bayside BP, joined the lawsuit as an additional party plaintiff with claims based upon the same legal theory as those of Double Diamond. Cypress Point is also a party to this appeal. For the sake of clarity, we refer only to Double Diamond.

- 3 -

carrying on the business of selling, handling, or dealing in gasoline, diesel fuel, kerosene, benzol, naphtha, greases, lubricating oils, or any fuel used for internal combustion engines, or lubricants in any form; unless the items sold, handled or dealt in are supplied, either directly or indirectly, from the Grantor. This restriction binds and restricts the property as a covenant and restriction running with the land and is deemed to benefit Grantor as an owner or lessee of lands in the City of Portsmouth, Virginia metropolitan area or as the operator or supplier of retail operations in the City of Portsmouth, Virginia metropolitan area. Except as otherwise provided herein, this restrictive covenant will remain in full force for a term of ten (10) years from the date of this conveyance, whereupon this restrictive covenant will automatically lapse and terminate and be of no further force or effect. If Grantor discontinues supplying gasoline to Grantee or an Affiliate (as hereinafter defined) of Grantee, or their respective heirs, executors, grantees, successors or assigns (unless such discontinuance is a result of the action of Grantee or an Affiliate of Grantee), on a direct or indirect basis for a period of thirty (30) or more consecutive days during such ten (10) year term, then, within thirty (30) days after receipt of Grantee's written request therefor, Grantor, at Grantor's sole option, shall either recommence supplying gasoline or terminate the foregoing restrictive covenant. Notwithstanding anything herein to the contrary, in the event the Dealer Supply Agreement with Grantee or an Affiliate of Grantee is terminated early pursuant to Section 27 of the Dealer Supply Agreement, this restrictive covenant shall remain in full force and effect for the remaining balance of the ten (10) year term of this restrictive covenant.

In October 2005, BP assigned to Miller Oil Company ("Miller Oil") its exclusive rights, pursuant to deed restrictions, to distribute BP fuel to several gas stations in the Virginia Beach area, including the Haygood station, which at the time was owned by Canal but not in operation. The assignment was part of BP's broad corporate strategy to transition from directly supplying retail

operations with BP fuel to indirectly supplying retailers through contracts with "jobbers" such as Miller Oil that would distribute BP fuel to the retailers. Miller Oil paid BP for the rights to distribute fuel to the specified stations, with the expectation that the Haygood station in particular would generate approximately one million gallons per year in fuel sales.

Also in October 2005, Canal entered into an agreement to sell the Haygood Station to Double Diamond. Double Diamond negotiated with Miller Oil concerning a supply agreement in November 2005, but closed on the purchase of the Haygood Station in January 2006 without a supply agreement for BP fuel in place. Double Diamond then attempted to enter into a supply agreement for BP fuel with PAPCO, Inc., another jobber for BP. PAPCO was unable to supply BP fuel for the Haygood station because BP had assigned the exclusive distributorship right from the deed to the Haygood station to Miller Oil. Double Diamond preferred the terms available under a supply contract with PAPCO to those available from Miller Oil because the cost of BP fuel from PAPCO was lower than the cost of BP fuel from Miller Oil, and because Miller Oil operates retail gas stations in the Virginia Beach market, whereas PAPCO does not compete in the retail market with Double Diamond.

Double Diamond sought a declaratory judgment that the restrictive covenant is no longer enforceable, as well as damages based upon the difference in cost between obtaining BP fuel from

Miller Oil or PAPCO. Double Diamond argues that: (1) the restrictive covenant is no longer enforceable according to its stated terms, because BP no longer benefits from the covenant as an owner or lessee of lands or as an operator or supplier of retail operations; (2) the covenant has terminated due to changed circumstances because the Haygood station is now supplied directly by a retail competitor, Miller Oil, that has the power to determine the wholesale price of fuel purchased by the Haygood station, rather than BP, which does not compete with the Haygood station in the retail market; and (3) the covenant has been invalidated by its unreasonable application to Double Diamond, because BP would earn the same profit margin on sales of fuel to the Haygood station through either Miller Oil or PAPCO.

BP moved for summary judgment, arguing that the restrictive covenant is enforceable according to its terms because, when read as a whole, the covenant benefits BP as either a direct or indirect supplier of fuel to retail operations, rather than only as a direct supplier of fuel. Accordingly, BP claims that the covenant did not become unenforceable when BP switched from supplying fuel directly to retailers to supplying fuel indirectly through jobbers. BP also argued that the covenant is not unreasonable as applied to Double Diamond, because it is applied in a non-arbitrary and non-discriminatory manner. Although BP could earn the same profit margin on fuel sold to Double Diamond for the

Haygood station through a jobber other than Miller Oil, BP would be subject to a claim by Miller Oil that it breached the contract for the sale of its supply agreement for the Haygood station if Double Diamond were allowed to purchase BP fuel elsewhere, because part of the value of the supply agreements that Miller Oil purchased from BP included the anticipated profits from selling fuel to the Haygood station.

BP also claimed that the marketability of its supply agreements to other jobbers throughout the country would be damaged if Double Diamond were able to avoid purchasing fuel from Miller Oil under this agreement. BP argued that the circumstances under which it executed the restrictive covenant have not changed radically, so as to invalidate the covenant, because although Miller Oil, unlike BP, is allowed to operate retail gas stations that could compete with the Haygood station, Miller Oil does not operate any gas stations within two miles of the Haygood station. BP's stated purpose for enforcing the restrictive covenant, to guarantee a market for its fuel, has not changed despite the move from directly supplying retailers to supplying retailers indirectly, and, therefore, BP argues that the circumstances surrounding the covenant have not radically changed.

The district court granted BP's motion for summary judgment, finding that the restrictive covenant remained valid according to its terms because BP still benefits from the covenant

as a supplier of fuel for retail operations, despite the fact that it now supplies fuel to retailers only indirectly. The court reasoned that BP may benefit as either a direct or an indirect supplier because the covenant specifies that its restriction terminates if BP stops selling fuel "on a direct or indirect basis." The inclusion of "indirect" in that provision would be meaningless if BP were to lose its status as beneficiary, thereby invalidating the covenant, by changing its operation from that of a direct supplier of fuel to that of an indirect supplier of fuel. The court found that although the restrictive covenant does not expressly allow BP to assign exclusive rights to distribute fuel to particular stations to third-party suppliers, BP has the inherent authority to unilaterally choose how it distributes its products, regardless of the covenant. The court determined that the circumstances surrounding the covenant have not changed so radically as to destroy its purpose to benefit BP as a refiner and supplier of gasoline, because BP still benefits from fuel sales as a result of the covenant, despite the fact that those sales are made through Miller Oil as an intermediate supplier. Double Diamond and Cypress Point noted a timely appeal.

We review de novo a district court's interpretation of a written contract as a question of law. See Seabulk Offshore, Ltd. v. Am. Home Assur. Co., 377 F.3d 408, 418 (4th Cir. 2004). The interpretation of the restrictive covenant at issue is guided

by Virginia law.  <u>Providence Square Assocs., L.L.C. v. G.D.F.,</u> <u>Inc.</u>, 211 F.3d 846, 850 (4th Cir. 2000).  A federal court sitting in diversity must "rule upon [Virginia] state law as it exists and not . . . surmise or suggest its expansion."  <u>Id.</u> at 850 n.3 (internal quotes and citation omitted).

(I) Enforceability of the Restrictive Covenant by its Stated Terms

Under Virginia law, covenants restricting the free use of land are disfavored and must be strictly construed.  <u>Mid-State</u> <u>Equipment Co. v. Bell</u>, 225 S.E.2d 877, 884 (Va. 1976).  "[T]he person claiming the benefit of the restrictions must prove that the covenants are applicable to the acts of which he complains." <u>Sloan v. Johnson</u>, 491 S.E.2d 725, 727 (Va. 1997) (citations omitted).  We will also apply Virginia principles of contract interpretation and "seek to determine the intent of the parties from the language expressed in the contract."  <u>Providence Square</u>, 211 F.3d at 850 (citation omitted).  Contract terms that are clear and unambiguous will be afforded their plain and ordinary meaning, but extrinsic evidence may be used to interpret vague or ambiguous terms, and substantial doubts or ambiguity about the meaning of a restrictive covenant will be resolved in favor of the unrestricted use of land.  <u>Id.</u> (citations omitted).

> To enforce a real covenant in Virginia, a party must prove the following elements: (1) privity between the original parties to the covenant (horizontal privity); (2) privity between the original parties and their

- 9 -

successors in interest (vertical privity); (3) an intent by the original covenanting parties that the benefits and burdens of the covenant will run with the land; (4) that the covenant "touches and concerns" the land; and (5) the covenant must be in writing.

Sonoma Dev., Inc. v. Miller, 515 S.E.2d 577, 579 (Va. 1999) (citation and footnote omitted).

Double Diamond argues that the restrictive covenant has expired according to its terms because BP no longer benefits from the covenant as a direct supplier of fuel to the Haygood station. Double Diamond contends that the language in the covenant concerning direct or indirect supply of fuel relates only to the scope of the restriction, meaning that Double Diamond may comply with the restriction by purchasing BP fuel either directly or indirectly. Double Diamond likewise contends that BP must benefit as a direct supplier of fuel if it does not benefit as an owner or lessee of land or as a fuel retailer, because the language describing the benefit to BP from the restriction does not include the description "indirect supplier."

We find, however, that BP still benefits from the restriction as an indirect supplier of fuel to the Haygood station. Arguably, BP would still benefit as a direct supplier of retail operations even if a particular retail operator chose to obtain its BP fuel indirectly, thereby maintaining the validity of the covenant while still giving meaning to the restriction. However, the restriction could be rendered meaningless under this

construction if all retail operators in the area chose to obtain BP fuel indirectly, robbing BP of its status as a direct supplier through no action of its own. We conclude that the term "supplier" in the beneficiary sentence was intended to encompass acting as either an indirect supplier or a direct supplier, because both manners of supplying are contemplated by the description of the restriction. The circumstances surrounding the covenant also indicate that BP was clearly contemplating that it would no longer own land or operate retail facilities in the area, and strongly indicate that BP contemplated phasing out its role as a direct supplier of fuel to retail operations, at the time the covenant was made. Accordingly, because BP clearly benefits from the covenant as an indirect supplier of fuel, the covenant is still enforceable according to its terms.

(II) Reasonableness of the Restrictive Covenant as Applied

A restraint on alienation of property is valid if it is reasonable. Carneal v. Kendig, 85 S.E.2d 235, 237 (Va. 1955) (citation omitted). The determination of the reasonableness of a restraint on alienation requires balancing the policy in support of free alienation against the policy in favor of carrying out the wishes of the grantor, while also considering whether the limitation in question is favored or disfavored by the law. Id. There is a distinction between the reasonableness of a restriction

- 11 -

on its face and the reasonableness of the restriction as applied, and a complaint must raise both issues in order for a court to properly consider them.  See Buchner v. Kenyon L. Edwards Co., 171 S.E.2d 676, 678 (Va. 1970).  A court must "consider (1) whether or not the agreement in question is reasonable as between the parties; and (2) if so, whether or not the agreement is injurious to the public interest by reason of its effect upon trade and, therefore, void."  Klaff v. Pratt, 86 S.E. 74, 77 (Va. 1915).

Double Diamond argues that the restrictive covenant is unreasonable as applied because the requirement that only BP fuel be sold at the Haygood station is unreasonable when applied in conjunction with Miller Oil's exclusive right to distribute BP fuel to the Haygood station, because Miller Oil competes in the retail fuel market and because BP earns the same profit on fuel it supplies regardless of whether it uses Miller or another supplier. This argument presents a more difficult question.  On the one hand, as the district court noted, BP possesses an inherent right to determine how it supplies retailers with fuel in the market, so the right to supply retailers through distributors with exclusive supply agreements does not have to be created by the restrictive covenant itself.  However, BP's decision to supply fuel to the Haygood station through an exclusive distributorship agreement with Miller Oil has a greater impact on Double Diamond as a consequence of the restrictive covenant.  Because Double Diamond cannot choose

to reject Miller Oil as a supplier, the covenant accords a potential retail competitor great control over the price of the fuel supply for the Haygood station.

If Double Diamond were allowed to comply with the restrictive covenant by purchasing BP fuel for the Haygood station through the supplier of its choice, the burden of the restrictive covenant on the Haygood station and its owner, Double Diamond, would be reduced, because Double Diamond could negotiate a lower price for its fuel supply. The burden is arguably no greater than it would be if BP were the sole direct supplier of its fuel, however, because Double Diamond would have no choice as to the terms of its fuel supply agreement with BP. Although Miller Oil is a potential competitor with Double Diamond in the retail market, there is evidence in the record that Miller Oil does not operate any retail gas stations within two miles of the Haygood station, and is therefore not currently in direct competition. Although this is a close issue, the standard for reasonableness established by Virginia courts does not clearly compel the invalidation of the restrictive covenant as applied to Double Diamond. Because we are sitting in diversity jurisdiction, we decline to surmise or suggest the expansion of Virginia law in this case by holding that the restrictive covenant is unreasonable as applied.

(III) Validity of the Restrictive Covenant in Changed Circumstances

A change in circumstances that is "so radical as practically to destroy the essential objects and purposes of the [covenant]" will render a restrictive covenant null and void. Chesterfield Meadows Shopping Ctr. Assocs., L.P. v. Smith, 568 S.E.2d 676, 680 (Va. 2002). "The determination of the degree of change necessary to have this effect is inherently a fact-specific analysis in each case." Id. In order to determine the extent of the restriction imposed by a covenant, a court should "look to the substance - not the label - of the activity sought to be restricted." Providence Square, 211 F.3d at 851.

Double Diamond argues that the restrictive covenant has expired due to changed circumstances because BP has radically altered its business practices by discontinuing its operations as a direct supplier of fuel to retail operations, instead supplying fuel for retail operations only indirectly. We hold that the circumstances surrounding the covenant have not changed so radically as to destroy the primary purpose of the covenant for its beneficiary, BP, namely to ensure a continuing retail market for its fuel in the Virginia Beach area. Although BP now benefits from the covenant as an indirect supplier of fuel, rather than a direct supplier, the essential purpose, to ensure an ultimate retail market for BP fuel, is still being met. Although arguably the covenant did not expressly restrict the retailer's choice of

- 14 -

supplier for BP fuel, the district court properly found that BP had the power to determine the terms under which it would supply fuel to retailers before the covenant was in place.  The circumstances surrounding the covenant have not radically changed merely because BP has opted to exercise that pre-existing right, and BP's ultimate purpose in enforcing the covenant is still served.

For the reasons stated above, we affirm the district court's judgment in favor of BP and against Double Diamond and Cypress Point.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>